## W. S. ROARK v. L. M. GREENO.

No. 11,387.* (59 Pac. 655.)

1. EVIDENCE—*Expert Opinions.* Medical experts, in response to hypothetical questions, are not required to answer with certainty, but may give their opinions as to the probable result of a given treatment or operation.

2. ———— *Questions to Experts.* In propounding such questions, counsel may base the same upon testimony which is weak and inconclusive, and on testimony of one or more witnesses, or on inferences properly deducible therefrom.

3. ———— *Objections Must be Specific.* An objection that a hypothetical question assumes facts not proved ought to point out with particularity the facts which are claimed to be untruly stated.

4. ———— *Rebuttal.* Incompetent testimony, erroneously admitted, may be rebutted.

* For opinion by court of appeals, see 8 Kan. App. 390, 56 Pac. 329.—REP.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-ELROY, judges.   Opinion filed January 6, 1900.   Reversed.

### STATEMENT.

W. S. ROARK brought an action in the district court of Geary county against L. M. Greeno to recover damages against the latter for alleged malpractice.   The defendant below was a dentist.   The amended petition in the cause stated, in substance :

On the 14th day of March, 1896, defendant was engaged in the practice of dentistry.   Plaintiff, desiring to have a tooth extracted, applied to defendant to perform the operation in such manner as in the latter's judgment was proper and necessary.   In performing the same defendant did not use reasonable care and skill.   On the contrary, he negligently, carelessly and unskilfully used surgical and dental instruments which were in an unclean, poisonous and septic condition, and did thereby injure, bruise, puncture, poison and infect the flesh, tissues and membranes in plaintiff's mouth, throat, and in and about the angle of the right lower jaw; and, by means of poisonous and dangerous drugs and medicines employed by defendant and injected into plaintiff's flesh, did poison and infect his blood.   At the time plaintiff was strong and robust, but immediately after the operation he became violently sick and suffered intense pain, and was wholly prostrated for many months.   His mouth, throat, face, lower jaw, and right ear, by reason of said injuries, became immediately diseased and impaired in their functions, and will remain permanently crippled and impaired in their natural uses; and plaintiff has become permanently injured in general health and capacity for work.   In trying to effect a cure for said disease and injuries, plaintiff suffered loss of the salivary glands on the right side of the mouth, throat, and neck, and loss of a portion of the right lower jaw-bone, leaving that member perma-

Roark v. Greeno.

nently crippled and susceptible of accidental fractures, and causing plaintiff to be permanently disfigured about the face, jaw, and neck. He was unable to perform his ordinary employment and business for five months, and paid out for services of physicians and surgeons, nurses and medicines, the sum of $500, his total damage being the sum of $4000.

The answer of the defendant below contained, first, a general denial, and second, an allegation that if plaintiff sustained the injuries of which he complained the same arose from natural causes or pathological conditions, his own negligence, and causes other and different from those alleged in the petition.

The plaintiff below, Roark, testified that his tooth began aching a day or two before he applied to Dr. Greeno for relief; that the latter made an examination and advised that the tooth be pulled — that it was decayed to some extent. Before proceeding with its extraction the doctor took a hypodermic syringe and injected some fluid in and around the gums and root, and behind the tooth particularly. He then took hold with his forceps and made two or three efforts to extract the tooth. The pain was very great, and after he had pulled once or twice he injected more medicine. Finally the tooth broke and he extracted a piece of the crown. He then used a pair of larger forceps, upon which plaintiff noticed blood near the joint. With the latter instrument one root was taken out The defendant then stated that he would not attempt to go further, but advised plaintiff to let the other root remain, that it would heal over and be all right. On examining the tooth it was found to be decayed slightly on the crown. After pulling the first root defendant used more medicine, which he injected through the needle, a very painful process. It seemed to the plaintiff that the needle went to the bone, es-

pecially when it was injected behind the tooth. The defendant then took a piece of cotton, upon which he placed a powder, inserting the same in the tooth, advising plaintiff to leave it there for several hours. The instruments with which defendant operated were lying on a shelf in his office, and he would pick up one and then another when using them. The witness also testified that the defendant did not sterilize his instruments, and afterward, when interrogated concerning this hypodermic syringe, defendant stated that it was a new one and had never been used on any one before. Immediately after the operation the plaintiff was taken with a chill, accompanied by headache, dizziness, and vomiting. The next morning his jaw and one side of his head were swollen. The symptoms were those of blood-poisoning. Plaintiff was in charge of physicians at his home for many weeks and suffered great pain. He afterward went to a hospital, where a surgical operation was performed, by which a large quantity of pus was liberated from his swollen jaw. He was under the doctor's care for several months. Part of his jaw-bone was removed.

The defendant, Greeno, testified that he found the tooth badly decayed. Its back or posterior shell was in place. He found the tooth sore. He used a hypodermic syringe with a curved needle, and the same was sterilized by inserting it in a solution of carbolic acid before the fluid was injected from it into the plaintiff's gum. The forceps also were first put into a solution of carbolic acid before they were applied to the tooth.

A trial by jury was had, resulting in a verdict of $2000 for the plaintiff. The jury returned findings as follows :

"1. Q. Did the defendant, L. M. Greeno, exercise

reasonable care and skill in the extraction and treat-
ment of the tooth of plaintiff and such as is ordinarily
possessed by dentists practicing in similar localities?
A. No.

" 2. Q. If your answer is that he did not, then state
in what manner he failed to exercise ordinary care and
skill; state fully and specifically.   A. In that de-
fendant carelessly and negligently used dental instru-
ments in an unclean condition.

" 3. Q. Did the defendant, in the extraction and
treatment of plaintiff's tooth, use his best judgment?
A. No."

Judgment was entered accordingly, which was re-
versed by the court of appeals, northern department.
(8 Kan. App. 390, 56 Pac. 329.)    The case is here by
virtue of an order of certification.

*J. V. Humphrey, G. W. Hurd,* and *J. B. Rairden,* for
plaintiff in error.

*Thomas Dever,* and *J. R. McClure,* for defendant in
error.

The opinion of the court was delivered by

SMITH, J.: The testimony in the cause, beyond that
given by the plaintiff and defendant, was principally
confined to the opinions of experts.   It is contended
by defendant in error that questions like the follow-
ing, calling for deductions from facts stated hypothet-
ically, were improper, as requiring opinions upon the
ultimate fact: " What would you say was the prob-
able cause of his affliction or condition at that time?"
" What, in your judgment, was the source of that in-
fection?"   " What, in your judgment, was the cause
of this plaintiff's sickness and affliction?"   " What,
in your opinion, was the cause of the blood-poisoning
from which plaintiff suffered?"

We cannot appreciate the force of this objection.

The object of this expert testimony was to secure the judgment of persons skilled in medicine and its effects as to the likelihood of plaintiff's affliction being caused by the defendant's failure to sterlize his dental instruments. The witnesses merely concluded that, if the defendant was guilty of the negligence assumed in the questions propounded, plaintiff's injuries were the probable result thereof; in other words, that plaintiff's physical condition after the operation had not with certainty resulted from the septic conditions of the instruments employed, but that there was a chance or likelihood that it did, the probabilities being that such was the case. The inquiry was properly a matter for the consideration of experts, and from the hypothetical questions propounded to them they could merely give their best judgment as to the cause of the plaintiff's disability. The contention of counsel for defendant in error, that the physicians testifying should have been required to state with certainty the cause of plaintiff's condition after a hypothetical case had been submitted to them, would be supposing an exactness in medical science to which its most learned followers have not yet attained. (*The State v. Baldwin*, 36 Kan. 1, 12 Pac. 318; *The State v. Asbell*, 57 id. 398, 46 Pac. 770; *Rhinehart v. Whitehead and another*, 64 Wis. 42, 24 N. W. 401; *Armstrong v. The Town of Ackley*, 71 Iowa, 76, 32 N. W. 180.)

It is objected that the hypothetical questions asked of the medical witnesses assumed facts imputing negligence to Doctor Greeno, and further, that they contained statements outside the testimony introduced in the cause. The questions propounded to Doctors Stone, King, Bard and Gilbert by counsel for plaintiff below assumed that the hypodermic needle was in an unclean or septic condition at the time it was used, and

they were called on to express an opinion as to the cause of plaintiff's condition and whether or not it resulted from the use of such instrument.    There was testimony bearing directly on the point that the instruments were not sterilized before use.    This appeared first in the testimony of Mr. Roark from his observations while in the dentist's office at the time of the operation, and from Doctor Greeno's statements to him afterward to the effect that the hypodermic syringe was a new one never before used; second, from the statements made by Doctor Greeno to Doctor King, wherein the former said he was sure that the hypodermic needle was clean because he used it as it came from the manufacturer, or from the house from which he ordered it; that he took it from the box in which it was received, and had never used it on any other patient.    Doctor King also testified that he had seen Doctor Greeno operate on patients occasionally within two years before the trial, had observed his use of a hypodermic needle for the injection of anæsthetic fluid, but had never seen him sterilize the same.

The assumption that the needle went to the root of the tooth is not without support.    Roark testified, "I could feel the stuff ooze out through the needle. He injected that in the gums around the roots of the tooth and behind the tooth particularly.  .  .  . Well, it seemed to me it went to the bone, especially when he inserted it behind the tooth."    The principal question was whether the plaintiff below was poisoned by the use of an unclean hypodermic needle, and in determining this it was not material whether the needle went to the root of the tooth or merely punctured the gum.

In propounding hypothetical questions, although the facts assumed to have been proved are based upon

20—61 KAN.

testimony which is weak and inconclusive, yet this does not render the questions improper. It cannot be said in this case, that if the testimony of the plaintiff below and Doctor King stood alone and undisputed, the jury might not conclude therefrom that the defendant below was guilty of malpractice in his treatment of the tooth. The fact, then, that the testimony of Roark and of Doctor King was disputed and possibly overthrown by a preponderance of the evidence (a matter for the jury to pass upon), could not affect the right of counsel for plaintiff below to put hypothetical questions based upon their testimony, or inferences properly deducible therefrom. In *Dilleber v. Home Life Insurance Company*, 87 N. Y. 79, 83, it was said:

"Counsel, in framing hypothetical questions to be put to expert witnesses, are not confined to facts admitted or absolutely proved, but facts may be assumed which there is any evidence on either side tending to establish, and which are pertinent to the theories which they are tempting to uphold."

In *Stearns v. Field*, 90 N. Y. 640, it was held that an error in the assumption of facts contained in the question propounded does not make the interrogatory objectionable if it is within the possible or probable range of the evidence. See, also, *Courvoisier v. Raymond*, 23 Colo. 113, 47 Pac. 284; *Hall v. Rankin*, 87 Iowa, 261, 54 N. W. 217. In Lawson on Expert and Opinion Evidence, 152, 153, it is said:

"An expert cannot give an opinion on a hypothetical statement which is not supported by the facts as brought out at the trial. There must be evidence tending to prove the matters stated in a hypothetical case to render it proper. But, some latitude must necessarily be given in the examination of medical experts, and in the propounding of hypothetical questions for their opinions, the better to enable the jury to pass upon the questions submitted to them. The

Roark v. Greeno.

opinion is the opinion of the expert, and if the facts are found by the jury, as the counsel by his questions assumes them to be, the opinion may have some weight, otherwise not. It is the privilege of the counsel in such cases to assume, within the limits of the evidence, any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed. The facts are assumed for the purposes of the question and for no other purpose. If the facts stated in hypothetical cases are not proved, the opinion, of course, goes for nothing.''

In propounding such questions, counsel are not required to use the exact words of witnesses. Applying the rule stated in the above authorities to the several hypothetical questions objected to, we think the range of the testimony warranted the hypotheses, with the possible exception of the assumption in two or three of the questions that the plaintiff below had undergone no other operation or abrasion of the skin or mucous membrane. This assumption of facts, however, we regard as immaterial. The injury to the plaintiff below was confined to the region of the tooth and jaw. Any prior abrasion of the skin or mucous membrane at any other place upon the body could not reasonaby account for the injury sustained by the dental operation upon and about the tooth. Testimony was before the jury that the plaintiff had worked up to the time of the operation, that his health was good until then, and had been for a number of years before.

We might well refuse to consider any of the assignments of error which relate to the objections made by defendant below to the hypothetical questions propounded to the medical experts. The objections made to these questions were that they were incompetent, irrelevant, and immaterial, and assuming facts not proved. None of the questions was composed entirely

of assumptions outside the proof.   Hence, the objection that a question assumed facts not proved in no manner conveyed information to the court as to what facts contained in the question were not proved.   In *K. P. Rly. Co. v. Cutter*, 19 Kan. 83, it was held that an objection to the introduction of testimony, to be available here for the purposes of error, should distinctly and clearly state the point of objection, so that we can see from the record that the very matter to which our attention is directed was presented to the mind of the trial judge.   In *Abbott v. Coleman*, 22 Kan. 250, 255, it was said : "All the authorities agree that an objection to evidence should be specific.   General objections are generally not sufficient.   No general objection could be framed to cover all possible objections."   In *Smith v. Brown*, 8 Kan. 608, in the fifth paragraph of the syllabus, it was said :

" If any portion of the evidence objected to is competent, the court may, on a motion to exclude the whole, exclude the part that is incompetent, but is not obliged to do so ;  it may only respond to the motion as made, and overruled.  The motion must fit the case, or the court may overrule it."  (See, also, *Insurance Co. v. Davis*, 59 Kan. 521, 53 Pac. 856.)

In the case of *Barber's Appeal from Probate*, 63 Conn. 393, 27 Atl. 973, it is held that an objection to a hypothetical question which does not state truly what the evidence in the case shows, without pointing out the objectionable particulars, is not sufficiently specific. See, also, *Prosser v. M. C. Ry. Co.*, 17 Mont. 372, 43 Pac. 81.   Again, in Rogers on Expert Evidence, 2d ed., 67, the rule is stated :

"A question based on an assumption which the evidence neither proves nor tends to prove is misleading. But to lay the foundation for exceptions on the ground that the hypothetical question embraces facts not in

evidence, the attention of the trial judge should be called to the specific objection, in order that he may determine, as he must in the first instance, whether there is sufficient evidence tending to prove the facts stated to authorize the question. For the rule is a general one, that objections to testimony should be specifically stated to the trial court, and that only such objections as are so stated can be considered on appeal.''

The testimony of Doctor King was objected to. He stated that he was present in Doctor Greeno's office occasionally within two years before the trial and saw him use a hypodermic upon patients, and observed that the doctor would pick up a syringe or needle, attach it, fill it with anæsthetic fluid such as he wished to inject into the tissues and inject the same, but he never saw him insert the needle in any disinfecting fluid prior to the operation. This testimony, in our judgment, was admissible. It was in direct rebuttal of Doctor Wilkes, a witness sworn on behalf of the defendant below, who testified that he was formerly in the office of Doctor Greeno, and, when asked whether or not he was acquainted with the usual methods of cleansing hypodermic needles used by dentists in Junction City and vicinity, stated that he was. He testified that he was employed in Doctor Greeno's office for four months in 1891, and made answer to one of the questions as follows :

'' A. I can tell the usual method we have used since I have been with Dr. Greeno and my own method. That is, in Junction City and vicinity. After using the hypodermic needle, or before, fill the syringe, draw a little solution of carbolic acid into the syringe and then force it out. I myself usually use something milder, listerine. Dr. Greeno uses carbolic acid and water, draws the carbolic acid and water into the syringe and forces it out. I use listerine or euthymol.

"Q. I will ask you, doctor, if you know whether or not the method pursued by Dr. Greeno is recognized by the dental profession as one of the reasonable methods of sterilizing a hypodermic needle? A. Yes, sir.

Whether or not this testimony of Doctor Wilkes, showing the usual practice of Doctor Greeno, was admissible on behalf of defendant below it is unnecessary for us to determine. After it was admitted, although it may have been erroneously done, it was proper for the plaintiff below to rebut it, and the testimony of Doctor King tended in that direction. (*Atchison, T. & S. F. R. Co. v. Reesman*, 9 C. C. A. 20, 60 Fed. 370 ; *Scattergood v. Wood et al.*, 79 N. Y. 263 ; *Wentworth v. Eastern Railroad*, 143 Mass. 248, 9 N. E. 563 ; *Brown v. Perkins & wife*, 1 Allen [ Mass.] 89.)

The defendant below resisted the action upon the theory that Roark's injury originated from the dead pulp in his decayed tooth and the formation of an alveolar abscess. Several dentists of experience, in answer to hypothetical questions put by counsel for Doctor Greeno, concurred that the injury could not have resulted from the use of instruments not sterilized. Experts testifying for plaintiff below took the opposite view. So did the jury.

No complaint is made of the instructions, nor that the verdict is excessive. Indeed the amount of damages found is exceedingly moderate, considering the suffering endured by the plaintiff in error. The case was fairly and carefully tried, and a verdict returned which is supported by the evidence.

The judgment of the court of appeals will be reversed, and the judgment of the district court affirmed.