No. 44,385

KEITH L. ROWE, *Appellee*, v. MAULE DRUG COMPANY, INC., a Corporation, *Appellant*.

(413 P. 2d 104)

Opinion filed April 9, 1966.

*Donald R. Newkirk*, of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, John T. Conlee, John Prather*, and *Richard I. Stephenson*, all of Wichita, were with him on the brief for the appellant. *Hugo T. Wedell*, of counsel.

*Everett C. Fettis*, of Wichita, argued the cause, and *R. L. Hamilton*, of Beloit, and *Robert C. Allan*, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: The controversy here centers on the medical evidence in a personal injury suit wherein plaintiff was awarded damages in the amount of $20,108.00 by the jury. Judgment against defendant was entered upon the verdict, defendant's motion for new trial was overruled and he appeals.

On July 6, 1960, plaintiff, a practicing dentist, while driving an automobile in Wichita was struck by defendant's automobile at an intersection. Plaintiff's car was spun clockwise and he was thrown out of it landing on his back. He was checked and x-rayed immediately at a local hospital and a lady companion, who was a passenger in the car with him, was hospitalized for some time. Plaintiff testified he was sore all over for approximately two weeks and he did not work during this time because of the soreness. Then he lost most of it except in the lower part of his back. About a month or six weeks after the collision plaintiff began having periodic episodes with his back, which occurred about every three months. He would get a very sharp catch in his back while stooping and be unable to straighten up for several minutes. The pain would remain for several days with his back stiff. During

this time he had to avoid bending his back because of the pain. Plaintiff felt the pain would go away but the episodes occurred more frequently, from six weeks to two months apart, and thereafter closer. This interfered substantially with the amount of dentistry he could perform and was reflected in his annual income. Plaintiff in 1962 consulted a doctor who had previously given him regular physical examinations and this doctor referred him to an orthopedic specialist who examined him August 1, 1962, and again in 1964. An osteopath physician examined him December 13, 1963. Prior to the collision and at the time of his regular physical checkup in the year 1959 plaintiff had a slight irritation or back sprain which he mentioned to the examiner but nothing was ever done about it and it never interfered with his work. His weight had fluctuated from time to time. At the time of the collision July 6, 1960, he weighed 190 pounds, at Christmas of that year 172 and he had since put on weight to the point where he was described as being moderately obese and his doctors had indicated such condition could add to the aggravation of his injury.

Several lay witnesses testified as to plaintiff's physical condition extending over a period of time prior to and after the collision. These included a certified dental assistant who worked for him, his mother who resided with him for a period of time, and a police officer who hunted and fished and also worked with him extensively. All of these described a substantial difference in his physical activities which change they related to the time of the collision. For a month or so after the collision plaintiff visited the lady passenger who was hospitalized as a result of the collision and he indicated to her he thought he had hurt his back in the collision. Plaintiff's dental assistant, his mother, and later the woman to whom he became married, urged him to see a doctor about his back long before he did. Meanwhile he had used heat pads, application of wet heat and anacin and other medicine to alleviate his pain.

The orthopedic specialist testified as to his physical findings based on his examinations of plaintiff, including evidence of back discomfort, and that he had recommended some conservative treatment including weight reduction and medication for the relief of muscle spasm. He also found some narrowing of certain intervertebral spaces which, according to x-ray examination, had existed prior to the collision. The doctor was asked these questions and gave these answers:

"Q. Doctor, based upon the historical information you received from the

patient at the time of your examination, based further on your physical findings and examination of the patient, can you state with any medical certainty that this man did receive at least some aggravation to his back condition as a result of the accident?

"A. Yes, I believe I could make this statement. Dr. Rowe stated that he was not having difficulty that required x-rays or medical treatment prior to the accident; he gave a history of having sustained what he thought was a minor accident at the time but it was enough to secure x-rays. I saw him sometime thereafter for a *revaluation*. I would not say that the x-rays findings were a direct result of the accident but the history is suggestive that the condition has worsened since the accident.

"Q. And consistently began as a result of the accident?

"A. Yes, I feel I could say that."

This doctor further testified that the history is very important in this type of case.

The osteopath physician also testified as to his findings of disability in plaintiff's back resulting from his examination and he further testified:

"Q. Doctor, assuming that there had been—strike that. First of all were you advised by him in his history that he was involved in [an] automobile accident on July 6, 1960?

"A. Yes.

"Q. Assuming there was some sort of a pre-existing weakness in Dr. Rowe's back at and before the time of the accident; assuming further that prior to the accident he had noticeable attacks; also assuming that at the time of the accident he was at a much lower weight level or under 200 pounds, and that during or soon following the accident he suffered disabling attacks with his back; would it be consistent with your findings that the accident, which he complains about, was a considerable contributing factor to the disabilities which he suffers?

"Mr. Newkirk: I object to this as calling for speculation of the witness and it has no probative value.

"The Court: Overruled.

"A. Yes, I think it would have a bearing on it.

"Mr. Fettis: You may examine.

"*Cross-Examination by Mr. Newkirk.*

"Q. Now, you answered Mr. Fettis' hypothetical question; that was the question where he asked you to assume certain things. You answered that you thought it would be consistent that some of his complaints were in some fashion related to the automobile accident two and one-half years before your examination. What was there in the hypothetical question that permitted you to give a medical opinion that there was a connection?

"A. The recurrent episodes of disability and pain he has had since the accident occurred.

"Q. And I take it the fact he told you he had no trouble before?

"A. No, he stated he had mild back pains on occasions before but not to the extent they occurred after the accident.

"Q. As you understood it from him, he had back pains before but since the accident the occurrences were of more severity?

"A. That is right.

Q. Now, was there anything else in the question that Mr. Fettis asked you which enabled you to form this opinion you gave, other than this history?

"A. Other than the history of the patient himself and his physical examination and the physical findings.

"Q. All right.

"A. For example the limitation of motion of the back with spasticity of the muscles.

*"Re-Direct-Examination by Mr. Fettis.*

"Q. Doctor, although you cannot give firm medical opinion in support of these matters as you have just told Mr. Newkirk, nonetheless your medical findings were consistent with the history recited to you, is that correct?

"Mr. NEWKIRK: We don't try lawsuits on consistencies. We try it on reasonable medical probability given by experts who are in a position to give such an opinion.

"THE COURT: Objection overruled. The witness may answer.

"A. Well, the physical findings were such that the patient did definitely have a back disability and how you can correlate that with the accident, I think that would be an assumption, apparently."

Defendant made no objection to the testimony of the orthopedic specialist at the time it was given but at the close of all the evidence made the following motion which was overruled by the court:

"At the close of all the evidence the defendant moves to strike that portion of the medical testimony which purports to connect the plaintiff's present complaints and disabilities, if any, with the accident for the reason there is no medical evidence of probative value to support such a causal connection."

Defendant requested the court to give the following instruction:

"Under the law a party who claims damages for personal injury has the burden of establishing his claim by evidence of reasonable medical probability. The jury may not engage in speculation nor conjecture nor may you rely on medical evidence of mere possibility."

This request was denied. The court gave other instructions including instruction No. 5 as follows:

"One who has a weakened or pre-existing condition of the body and who is injured by the negligent act of another, is entitled to damages from the wrongdoer if the prior existing condition is aggravated or made more severe by reason of the negligent act of the wrongdoer.

"If you find that the plaintiff's prior existing condition was not aggravated by the collision, then plaintiff can recover nothing. But if you should find that his prior existing condition was aggravated by the collision, and that plaintiff himself was not negligent, then you should allow to plaintiff such sum of money as will fairly compensate for the aggravation of his condition.

In estimating the amount of recovery you are to consider his physical condition just before the collision, his present physical condition, and how much the injury will impair his health and income earning capacity, if at all, in the future. And you may also allow the amount of such doctor bills as you find were reasonably incurred as a result of the collision. You are also to consider and allow the amount of damage to his automobile which has been stated as $560.00.

"You may consider the physical pain and suffering, if any, to which plaintiff was or may in the future be subjected as a result of the collision. After considering the entire case you may allow such sum of money, as in your opinion, will be a fair and full compensation for the aggravation or injuries sustained."

Defendant contends there was not sufficient competent medical evidence to support any finding that the collision was causally connected with the physical complaints, and that the court erred in receiving and refusing to strike the medical testimony which was based only upon a possibility that the plaintiff's condition might have resulted from the collision, and that the court erred in failing to give defendant's requested instruction and in giving instruction No. 5.

Defendant specifically makes no claim of excessive verdict but he does contend the crucial issue, in the light of the amount of the verdict, was whether plaintiff suffered any form of permanent injury as a result of the collision, conceding that his special damages amount to $630.00 and that he was disabled for about two weeks, and defendant contends that the jury was permitted to speculate that plaintiff did sustain permanent injury as a result of the alleged trial errors.

Defendant argues the medical testimony amounted only to a possibility that plaintiff's condition at the time of the trial might have resulted from the collision and that causation was not shown by evidence of sufficient probative value.

Defendant cites the conclusion of the annotator at 135 A. L. R. ¶ II, p. 517, as follows:

"It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have,' 'may have,' or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have,' 'may have,' or 'could have' resulted or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal

relation in question and does not include words indicating the probability or likelihood of its existence. . . ."

And defendant further cites a line of cases typical of which is *Bearman v. Prudential Ins. Co. of America,* 186 F. 2d 662 (10th Cir., Kan., 1951). The question in that case was whether the death of an insured from coronary occlusion resulted from accidental injury some six weeks prior to death or from disease. Medical witnesses testified that trauma may produce a coronary occlusion and that the injury sustained by the insured might have contributed to his death but they were unwilling to state that the accident caused the coronary occlusion. The court stated:

"Whether there was causal connection between the accident and resulting injury and the atherosclerosis, the rupture of the atheromatous abscess, the thrombosis, or the coronary occlusion presented a question for solution not within the competency of laymen, and a question with respect to which, only a medical expert with training, skill, and experience could form a considered judgment and express an intelligent opinion. Indeed, it perhaps would require a medical expert trained and experienced in a specialized field.

"The great weight of authority supports the rule that medical expert testimony to be sufficient to take the case to the jury must be to the effect that the accident or injury probably caused the Insured's death; and that testimony to the effect that a causal connection between the accident or injury and Insured's ensuing death was possible, such as testimony that the accident or injury 'might have,' or 'may have,' or 'could have' caused the death of Insured, is insufficient to take the case to the jury, because such testimony leaves the issue in the field of conjecture and permits the jury to speculate or guess as to the cause of death." (p. 665.)

We can have no disagreement with this line of cases but they are readily distinguished on the facts inasmuch as we cannot accept defendant's construction of the testimony here. First, we cannot construe the answers of the two medical witnesses offered by plaintiff as mere expression of possibility. We will not indulge in semantic refinements respecting each of the particular words used in both the questions and the answers in determining the fair import of the testimony. The answers did go beyond the questions. Both doctors found disability. The statement of the orthopedic specialist was that plaintiff's history was suggestive that his condition had worsened since the accident and further that he felt he could say that it "began as a result of the accident." He emphasized the importance of the history in reaching a conclusion. The osteopath stated he thought the collision "would have a bearing" on plaintiff's condition as he found it. This opinion as to connection was shown to be based on the recurrent episodes of disability and pain plaintiff

had had since the collision and upon his physical examination and findings. We think this testimony amounted to an honest expression of professional opinion that there was a causal connection between the collision and the condition complained of. This is all that is or ought to be required. In the case of *Roark v. Greeno*, 61 Kan. 299, 59 Pac. 655, it was said:

"The contention of counsel for defendant in error, that the physicians testifying should have been required to state with certainty the cause of plaintiff's condition after a hypothetical case had been submitted to them, would be supposing an exactness in medical science to which the most learned followers have not yet attained." (p. 304.)

It will be seen that the answers given in the case at bar are very different from those in *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862, also relied on by defendant, wherein this court described the doctor's answers as stating it was possible that an accident might have caused the present condition of the plaintiff.

Moreover, the conclusion defendant would have us reach ignores any significance to be given to the lay testimony in the case. We note that the annotator at 135 A. L. R., *supra*, further has this to say about the sufficiency of evidence to establish causal connection:

"There are a number of cases which, while apparently admitting that medical evidence showing only a possibility of a causal relation between an accident or injury and subsequent death or physical or mental impairment is not, by itself, sufficient to establish such relation, uphold the view that such evidence, in conjunction with other evidence, nonexpert in nature, indicating that such a relation exists, although likewise not sufficient by itself to establish the relation, or in conjunction with admitted or obvious facts and circumstances of the case showing that death or physical disability would naturally and probably result from the injury, is sufficient to establish the causal relation." (p. 532.)

There is no question that plaintiff was involved in a rather serious collision and that he received some injury as a result thereof. Lay witnesses testified to obvious facts within their knowledge and observation respecting plaintiff's physical condition. While we have not gone into that evidence in detail, these witnesses very definitely related a decline in plaintiff's physical condition to the time of the collision, which continued up to the time of the trial in March, 1965. None, of course, expressed any opinion as to causation but it certainly was not improper for the jury to consider this evidence in connection with the medical evidence in reaching a conclusion, this not being the type of case where, as in the *Bearman*

case, because of the nature of the subject matter, expert testimony alone is essential to the formation of an intelligent opinion.

In view of the foregoing we conclude no error was committed in the receipt of the medical evidence and that there was sufficient competent evidence of causal connection between the collision and plaintiff's subsequent condition.

Turning now to the instructions, the only ground for the objection to instruction No. 5 was that it failed to inform the jury that its verdict must be based on evidence of reasonable medical probability. In asserting this objection defendant stated that it was made because the court had admitted "evidence of possibilities and is conjectural and speculative." The same thought was embodied in his requested instruction. These claims of error are part of the same attack and are based on the major premise of defendant as to the character of plaintiff's evidence with which premise we have just disagreed; hence they likewise cannot be sustained. As has already been indicated, the requested instruction was not appropriate to the evidence, being too broad in that it tended to limit the jury's consideration to evidence offered by medical witnesses. The jury was instructed in what was primarily a fact case as to quantum and burden of proof, preponderance of the evidence, what constituted causal connection, and of its province in determining credibility and weighing evidence. These were all matters for fair argument under the evidence which the jury resolved. There being no error shown, the judgment is affirmed.

APPROVED BY THE COURT.