No. 45,890

STATE OF KANSAS, *Appellee*, v. JIM SAGEBIEL, *Appellant*.

(480 P. 2d 44)

Opinion filed January 23, 1971.

*Shelley Graybill,* of Elkhart, argued the cause and *Jacob S. Graybill,* of Wichita, was with him on the brief for appellant.

*Keaton G. Duckworth,* County Attorney, argued the cause and *Kent Frizzell,* Attorney General, was with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant, Jim Sagebiel, appeals from a conviction of second degree murder. He was arraigned on a charge of first degree murder in connection with the death of Malcom Keyser. The case was tried to a jury.

Malcom Keyser died in a livestock sales pavilion in Elkhart, Kansas. An altercation occurred between Keyser and the defendant outside the sales pavilion. A few minutes thereafter the defendant followed Keyser into the sales pavilion office and shot Keyser several times at close range with a hand gun in the presence of witnesses. Additional facts will be developed as three specifications of error are examined.

Defendant first attacks the qualifications of two veniremen who were challenged but not excused for cause. The basis of defendant's challenges is K. S. A. 62-1409 which reads:

"It shall be a good cause of challenge to a juror that he has formed or expressed an opinion on the issue or any material fact to be tried."

The first venireman challenged for cause to be considered herein is a Mrs. Melia.

In the case of Mrs. Melia she stated she was not acquainted with the defendant. She had previously read newspaper articles and had talked to people about the incident. She had formed and expressed opinions about the incident but thought she could make an independent judgment on the case based solely on the evidence and in accordance with the court's instructions.

Eighty-seven veniremen were examined on *voir dire*. Forty-nine were challenged and excused for cause. Mrs. Melia was not one of the forty-nine excused for cause. She was subjected to intensive questioning by both the attorneys and the court. She was removed later from the panel by peremptory challenge so she did not sit as a juror in the trial of the case.

Generally, error in overruling a challenge to a juror for cause is not ground for reversal when the juror does not sit in the case and when the accused is not in some way prejudiced thereby. (*State v. Hoy*, 199 Kan. 340, 345, 430 P. 2d 275; *State v. Paxton*, 201 Kan. 353, 359, 440 P. 2d 650.)

In *State v. Hooper*, 140 Kan. 481, 37 P. 2d 52, this court said:

". . . While our statutes contemplate the use of peremptory challenges on jurors qualified for cause, error in the court's ruling on a challenge for cause, especially if the soundness of the ruling is seriously debatable, should not require a reversal of judgment of conviction, if in fact, as here, the defendant had a trial before an impartial jury." (p. 502)

The constitutional guaranty requires that an accused be tried by an impartial jury. When a venireman is removed from the panel by peremptory challenge his qualifications or lack of them are no longer a controlling factor upon which to base prejudicial error on appeal. The question in such case is whether the jury who tried the accused was composed of impartial citizens. (*State v. Springer,* 172 Kan. 239, 239 P. 2d 944.)

Mrs. Melia was not one of those jurors who tried this case. Under the reasoning in *State v. Hooper,* supra, the soundness of the court's ruling is, at least, within the realm of fair debate and the ruling does not require a reversal of the conviction.

The second venireman whose qualifications as a juror were attacked unsuccessfully on *voir dire* was a Mr. Bultman. He remained on the panel that tried this case. He was subjected to intensive examination on his qualifications.

In response to questions, Mr. Bultman stated he had known the defendant for fifteen years and this acquaintanceship would have an effect on his judgment in the case. He had read newspaper articles and had some opinions as a result of what he read. He had expressed no positive opinion about what happened but did have an impression about the incident. When asked if he could conscientiously listen to the evidence presented in the case and then apply the law as instructed by the court, he said: "I think I could."

Only two challenges for cause were overruled by the court, the challenge to Mrs. Melia and the one to Mr. Bultman. Bultman was not challenged peremptorily and was permitted to remain. We are not told why defendant chose not to exercise one of his twelve peremptory challenges on Bultman. Appellant raises no question as to the objectionable character of any of the other veniremen. Presumably, defendant used one peremptory challenge on Mrs. Melia. His remaining eleven challenges were used on prospective jurors against whom he voiced no objection during his extensive *voir dire* examination.

In a criminal prosecution the question of whether a challenge for cause of a prospective juror should be sustained because he has formed or expressed an opinion as to an issue in the cause is addressed to the sound discretion of the trial court and the decision thereon will not be disturbed unless it appears the trial court abused its discretion. (*State v. Springer,* supra; *State v. Hooper,* supra.)

Mr. Bultman stated he thought he could conscientiously listen to the evidence presented in the case and then apply the law as instructed by the court. The nature of the opinions formed and expressed by the juror are not disclosed. The trial court and the attorneys were not convinced of any bias on his part when he was permitted to sit.

In *State v. Stewart*, 85 Kan. 404, 116 Pac. 489, this court discussed what constitutes a disqualifying opinion. It was said:

"It is impossible to give a definition that will fit all cases, and whether what is called an opinion will disqualify is a question of fact determinable from the manner, appearance and expressions of the proposed juror, the source of his information, the form of the questions to which his answers are given, and from these and other things the trial court is to determine whether his opinion is fixed and positive or whether he is an unprejudiced man whose impression or opinion is wholly contingent upon the truth or falsity of the information he has received and who is free to hear and impartially consider the evidence and to render a verdict without regard to any former impression or opinion which he may have had. If it is of the latter kind and the trial court decides that he is a competent juror there is no reason for interfering with the decision. . . ." (p. 410)

This court cannot say the trial court abused its discretion in overruling the challenge to Mr. Bultman for cause.

Appellant's next specification of error attacks the sufficiency of the evidence to establish beyond a reasonable doubt that appellant caused the death of Mr. Keyser.

A blood sample drawn during an autopsy from the dead body of Mr. Keyser was sent in for testing. An analysis of the specimen indicated that the blood specimen contained .447% methyl alcohol. A chemist testified that methyl alcohol is a poison and a blood concentration of .447% methyl alcohol is lethal.

The blood specimen had been drawn from the body of Keyser by a mortician prior to starting the embalming process. The embalming process in this case included the circulation of an embalming fluid containing 35% methyl alcohol into the arterial system of the dead body. The mortician testified that he first withdrew the blood sample into a glass vial. When he inserted the stopper a triangular piece of glass broke from the top of the vial. He placed the vial in a cabinet where he kept his embalming instruments. He then began the embalming process.

Dr. Dodson who did an autopsy on the dead body of Mr. Keyser testified that on the following day he poured this blood sample from the broken vial into another vial and gave it to the sheriff to send in

for analysis. He testified that during the autopsy he noted various gunshot wounds on the body of Mr. Keyser. One such wound was in the right chest two inches lateral of the midsternal area. A similar wound appeared in the right arm and another in the left thigh. There was a superficial wound at the back of the neck and two additional wounds in the left arm. There appeared adhesions about the right lung and the right lobe of the liver was lacerated. He found one metallic object under the right armpit. As a result of the autopsy, pathology tests and the blood alcohol report he concluded the cause of death was from multiple gunshot wounds resulting in internal hemorrhage, shock and death. He further testified he did not base his conclusion on the analysis of the blood sample because he considered the specimen contaminated.

Appellant argues the burden is on the state to prove the *corpus delicti* beyond a reasonable doubt and in a prosecution for homicide this consists of proving death from some criminal agency. The proof must exclude death by accident or suicide beyond a reasonable doubt. In support thereof appellant quotes at length from *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846.

The Doyle case is readily distinguishable on the facts. Under the facts of that case the emphasis placed upon the exclusion of death by accident or suicide was required of the state since the circumstances pointed no more strongly to criminal homicide than to death by accident or suicide. In *Doyle* the dead man was found seated behind the steering wheel of his car. The car was parked on a little travelled roadway. The dead man was slumped over the steering wheel with a single bullet wound in his right temple. A pistol lay beside his right hand on the front seat of the car. The doors and windows of the car were closed. Blood from the fatal wound had run down and collected on the seat and floorboard. There was no evidence, circumstantial or direct, to indicate that the accused was ever at the scene of the alleged crime. The circumstantial evidence surrounding the death pointed no more strongly to criminal homicide than to death by accident or suicide. In *Doyle* we held a conviction for murder must be grounded on something more than probabilities, possibilities or suspicions of guilt and that the evidence introduced failed to sustain a conviction.

In the present case there was evidence of an altercation between the appellant and Mr. Keyser. Eyewitnesses were present at the sales pavilion when the appellant approached Keyser with a gun in

hand. The appellant was overheard to say, "I will teach you," and "You can't talk to me like that". One witness saw the appellant fire the gun at Keyser and saw Keyser grab his chest and start to fall. Mr. Keyser was pronounced dead within one hour. The cause of death was unequivocally given by the doctor who performed the autopsy. He concluded the death was caused by multiple gunshot wounds which caused internal hemorrhage, shock and death.

The result of the blood analysis was conflicting evidence which the jury had to consider and resolve. The chemist testified that to produce a blood concentration of .447% of methyl alcohol a live person would have to ingest seven ounces of this poison. He further testified a drop and a half of embalming fluid accidentally included in the blood sample would bring about the same result. There was no evidence that Keyser had been drinking anything on the morning he died. There was testimony that immediately before he was shot by appellant he was able to function well enough to drive his truck, to have an argument with appellant and to return to the sales pavilion to make arrangements for papers he was to receive on horses purchased the previous day.

In addition there was evidence of circumstances surrounding the taking of the blood specimen which might well render the result of the blood analysis suspect in the minds of the doctor and the jurors.

No objection was made by the appellant to the court's instructions. We must assume the jury was properly instructed that before finding the appellant guilty of murder in the second degree they must find beyond a reasonable doubt he did purposely and maliciously but without deliberation and premeditation kill Malcom Keyser by shooting him with a gun. The verdict of the jury indicates these elemental facts were found.

In a criminal prosecution it is the function of the jury in the first instance and of the trial court after verdict to determine what facts are established by the evidence. Before a verdict of a jury which has been approved by the trial court may be set aside on appeal for insufficiency of the evidence it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court. (*State v. Helm*, 200 Kan. 147, syl. ¶ 2, 434 P. 2d 796.) In other words, a verdict of guilty which has been approved by the trial court will not be set aside because of insufficiency of evidence, unless it is clearly made to

appear that upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the trial court. (*State v. Paxton*, supra.)

There is substantial evidence in the record before us to support the conclusion reached in the trial court that Mr. Keyser's death was caused by gunshot wounds.

Appellant's final specification of error is based upon a claim of insanity at the time of the shooting.

On or about the time of appellant's arrest he was referred to a hospital in Wichita, Kansas, for psychiatric and neurological evaluation to determine if he was able to stand trial. Although the results of this evaluation are not disclosed we must assume he was sane at the time of the trial for no claim is made otherwise. There is no evidence that appellant had any history of insanity.

When arraigned on the charge of first degree murder the appellant stood mute, with his attorney present. At the subsequent trial and after the state's evidence was introduced, the appellant took the stand and testified in his own behalf. He stated that he had no recollection of events after he was hit in the back of the head during his argument with Keyser. He had no recollection of firing the shots. His first recollection was later that evening as he was driving his truck toward Springer, New Mexico. He filled his pickup truck with gas in Springer and then turned around and started back home. When he arrived in Elkhart he stopped and asked the night marshal if the marshal was looking for him. The marshal said he was and searched him but found no gun. The gun was never found.

Two psychiatrists then testified on behalf of appellant. Dr. George, of Wichita, had examined appellant two days after the shooting occurred. Dr. Gulladge had examined appellant six months later or five days before the trial. Both psychiatrists testified that on the basis of their interviews with the appellant they concluded he was suffering from a disassociative reaction (amnesia) when the shots were fired. In response to hypothetical questions put to them they testified it was their opinion the appellant did not know the nature and quality of his act when he pulled the trigger of the gun and at that time he did not know right from wrong.

On oral argument the state's attorney indicated he was surprised by this defense at the trial and was not prepared to introduce expert testimony in rebuttal. The appellant now argues on appeal that the appellant was entitled to a directed verdict of not guilty by

reason of insanity since no expert testimony was offered in rebuttal by the state.

The rule contended for by appellant was thoroughly discussed and rejected as not being the law of this jurisdiction in the recent case of *State v. Coltharp*, 199 Kan. 598, 433 P. 2d 418.

An accused is not entitled to an acquittal simply because he has produced expert witnesses, psychologists or psychiatrists, who testify in answer to hypothetical questions based upon facts put in evidence by the accused and who conclude upon facts given them that the accused was insane when the offense was committed.

In *Coltharp* we held the question whether a defendant in a criminal action was sane or insane at the time of the commission of the offense is to be determined by the jury, under proper instructions from the court, upon the evidence introduced bearing upon such issue.

No question has been raised as to the sufficiency of the trial court's instructions. We must therefore assume that proper instructions were given on appellant's defense of insanity.

The rule stated in *Coltharp* and in *State v. Mendzlewski*, 180 Kan. 11, 299 P. 2d 598, must be applied here. In *Mendzlewski* it was stated:

". . . Under such circumstances this court has long been committed to the rule [citing authorities] recognized by courts of other jurisdictions [citing authorities] that the question whether a defendant in a criminal action was sane or insane at the time of the commission of the offense with which he stands charged is one to be determined by the jury, under proper instructions from the court, upon the evidence introduced bearing upon such issue. . . ." (p. 14.)

The testimony of the nonexpert witnesses who observed the events leading up to the shooting and who described the actions and demeanor of the accused immediately before, during and after the shooting may be considered by the jury along with the testimony from expert witnesses. (*State v. Coltharp*, supra; *State v. Mendzlewski*, supra.) It is the function of a jury to determine the credibility of all witnesses, expert and nonexpert. The sanity of an accused at the time a crime is committed is to be finally determined by the jury if there is substantial evidence, testimony from experts or nonexperts, to support a verdict.

Under the rule previously stated herein a verdict of guilty which has been approved by the trial court will not be set aside because of insufficiency of evidence, unless it is clearly made to appear that

upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the trial court. (*State v. Paxton*, supra; *State v. Helm*, supra.)

There was substantial nonexpert testimony introduced in this case from which the jury could properly determine that defendant was sane and criminally responsible when he shot Malcolm Keyser.

Judgment is affirmed.