No. 49,849

STATE OF KANSAS, *Appellee,* v. RODNEY SANDERS, *Appellant.*

(587 P.2d 893)

148

Opinion filed December 9, 1978.

*Michael J. Peterson,* of Kansas City, Kansas, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* chief deputy district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal by defendant Rodney Sanders from a jury verdict convicting him of first degree murder (K.S.A. 21-3401), aggravated assault (K.S.A. 21-3410), and two counts of assault (K.S.A. 21-3408). These charges arose from a shooting resulting in the death of Sol Rosen in Kansas City, Kansas.

On June 20, 1977, at approximately 6:00 p.m., defendant arrived at Sol Rosen's place of business at 915 Minnesota in Kansas City. Defendant and Rosen spoke briefly outside the building where Rosen was preparing to get into his car to drive home. Without warning, defendant produced a .357 Magnum handgun and shot Rosen three times. He fired another shot when Rosen's business partner, Phillip Balano, came toward the two men. Defendant then fled the scene and officers Patrick Ohler and Duane Lee of the Kansas City Police Department proceeded toward the area after hearing dispatch reports of the shooting. They saw defendant run into a yard on the northwest corner of 10th and Ann Avenue. Defendant pointed a weapon at the officers and the police car then struck him, knocking him down and breaking his leg. Defendant was subdued by the officers and transported to the hospital where he was given treatment in the emergency room.

On appeal, defendant contends the trial court erred in not discharging the jury panel prior to the *voir dire* examination of the jurors in that the array of jurors contained only one individual of the black race who, after *voir dire,* was struck by the state. Defendant moved to strike and discharge the panel for that reason.

It is well settled that although a black defendant does not have the right to demand that members of his race be included on a

jury (*State v. Jordan,* 220 Kan. 110, 114, 551 P.2d 773 [1976]), the defendant has a right to require that the state not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice. *Alexander v. Louisiana,* 405 U.S. 625, 628-29, 31 L.Ed.2d 536, 92 S.Ct. 1221 (1972). We have stated that when a challenge is made to the entire jury array, systematic or purposeful exclusion of members of a particular race or group may not be presumed. Such exclusion must be established by proof. *State v. Walker,* 217 Kan. 186, 190, 535 P.2d 924 (1975). Currently, juries in Wyandotte County are selected by computer on a random basis from lists of personal property tax rolls and census rolls. It is impossible to assure a black defendant that a certain number of black jurors will be called for jury service for his trial because during the jury selection process the individual's race is not designated on the computer tape. The selection process is racially neutral and there is no evidence of systematic or purposeful exclusion of any minority.

Defendant proposes the method of jury selection be changed and recommends racial designation be added to each person's name given to the computer. As we stated in *State v. Jordan,* 220 Kan. at 114, a black defendant is not constitutionally entitled to be tried by a jury containing members of his race. It would appear the recommendation of defendant would enhance the opportunity for discrimination in jury selection and would be directly contrary to *Alexander v. Louisiana,* 405 U.S. 625; *Whitus v. Georgia,* 385 U.S. 545, 17 L.Ed.2d 599, 87 S.Ct. 643 (1967); and *Avery v. Georgia,* 345 U.S. 559, 97 L.Ed. 1244, 73 S.Ct. 891 (1953). We hold defendant's recommendation to be without merit.

Defendant alleges error in allowing officers Lee and Ohler to testify to statements made by defendant in their presence, both at the scene of arrest and at the hospital. He contends the statements were not disclosed to the defense prior to the witnesses' testimony and there were no hearings to determine the voluntariness of the statements. Defendant also alleges the prosecutor stated at the pretrial conference that defendant made no statements, either written or oral, concerning the crime.

Both arresting officers submitted signed statements dated June 21, 1977, stating there were no conversations with defendant, either at the time of arrest or at the hospital, other than a brief

reference to defendant's injuries at the time of arrest. At the preliminary hearing on July 29, 1977, the officers confirmed these statements. In addition, when questioned by the court regarding any oral, written or recorded statements or confessions made by defendant, the state replied there were none. At trial, however, the two officers testified defendant stated at the scene of arrest that he hadn't shot anybody. The officers also testified that, in answer to a question by a hospital employee, defendant stated a "little bird" told him to do it. Defense counsel objected to both statements and the objections were overruled.

The prosecutor admits the statements were incriminating to defendant, but contends in view of the overwhelming evidence against defendant the statements lost much of their importance and their admission does not constitute reversible error. K.S.A. 22-3212 (7) requires a party to disclose additional evidence previously requested or ordered which is subject to discovery. If a party fails to comply with this statute the court may order the party to permit discovery, grant a continuance, prohibit the party from introducing the undisclosed material into evidence, or the court may enter such other order as it deems necessary. The record indicates defense counsel knew nothing of the statements and the prosecutor learned of them approximately one week before trial. Clearly, the prosecutor failed to comply with the provisions of K.S.A. 22-3212 (7). We have stated the trial court is vested with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order. *State v. Walker,* 221 Kan. 381, 385, 559 P.2d 381 (1977); *State v. Jones,* 209 Kan. 526, 528, 498 P.2d 65 (1972). Defendant attempted to prove he was insane when he committed the acts. He did not attempt to prove he had not committed the acts. His statement at the arrest, denying he shot anybody, is almost irrelevant in light of his admission. It is obvious defendant committed the acts complained of and prior knowledge of the statement would not have aided in his theory of defense. We turn to the statement made at the hospital, where defendant stated a "little bird" made him do it. This statement also tends to incriminate defendant, but it cannot be said it is prejudicial to his theory of defense. Although the state failed to comply with a discovery and inspection order pursuant to K.S.A. 22-3212 (7), the admission into evidence of this material does not constitute prejudicial error because the material is not contrary to the theory of the defense.

Defendant further claims the trial court erred in not sustaining his motion for a directed verdict of not guilty by reason of insanity. He argues the state did not prove beyond a reasonable doubt that he was sane at the time of the crime. Defendant's long history of mental disorder was first noted at the Wyandotte County Mental Health Center in 1965. His medical record shows he complained of hearing voices in his head which governed his actions, and he exhibited irrational, often bizarre, behavior in his day-to-day activities. He was diagnosed as a paranoid schizophrenic and was given medication in an attempt to control his delusional state. Testimony revealed he had taken the medication regularly until February, 1977, when on the advice of his pastor, the Reverend Russell Davis, he ceased taking medication and stopped visiting the Wyandotte County Mental Health Center.

A motion for discharge, a motion for directed verdict, and a motion for judgment of acquittal all go to the sufficiency of the evidence to support a conviction. *State v. Ames,* 222 Kan. 88, 95, 563 P.2d 1034 (1977). In *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290 (1973), we stated the test for a motion for acquittal:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion." (Syl. ¶ 3.)

It is a rare occasion when an insanity question should be taken from a jury by a motion for acquittal. *State v. Nemechek,* 223 Kan. 766, 768, 576 P.2d 682 (1978). The test for taking the issue of insanity away from the jury was adopted by this court in *State v. Chase,* 206 Kan. 352, 362, 480 P.2d 62 (1971). In order to remove the case from the jury's consideration on the basis of the evidence, reasonable men must necessarily possess a reasonable doubt as to defendant's sanity and must conclude that the government has failed to sustain its burden of proving beyond a reasonable doubt that the accused had the capacity to commit the crime. *Dusky v. United States,* 295 F.2d 743, 756 (8th Cir. 1961).

In *State v. Nemechek,* 223 Kan. at 769, we stated:

"Unless evidence of insanity is so great that a trial judge can rule the govern-

ment could not convince a reasonable man it has sustained its burden of proof as to defendant's sanity, the issue should go to the jury . . . ."

In *State v. Chase,* 206 Kan. at 362, the court stated the jury should be free to make an independent analysis of the facts on which the opinions of the experts rest. The court refused to transfer the jury's function of weighing the evidence and passing on the mental condition of the defendant to the psychiatrists. Here, we are faced with a battery of opinions from medical experts who testified on defendant's behalf. The medical experts who testified for defendant included three psychiatrists, a psychologist and a psychometrician. Testimony revealed that defendant's delusional state increased after he stopped taking his medication. The testimony of Dr. Antonio Paschino, a psychiatrist at the Wyandotte County Mental Health Center, verified defendant had been receiving treatment from the clinic at the center since 1965, although Dr. Paschino had not personally treated him until 1975. He diagnosed defendant as a paranoid schizophrenic, noting his delusional, psychotic state, auditory hallucinations, and homicidal tendencies. The doctor also testified he did not believe defendant knew right from wrong at the moment of the crime. Dr. Claude J. Werth, another psychiatrist, testified to having spent a total of three and one-half hours with defendant after the shooting and also diagnosed him as a paranoid schizophrenic, relating many of the same symptoms noted by Dr. Paschino. In addition, Dr. Werth testified defendant had become obsessed with the idea of killing Rosen about two weeks prior to the shooting. Defendant told the doctor that "voices" commanded him to commit the act. Dr. Werth did not believe defendant knew right from wrong at the time of the shooting. Dr. Manuel Pardo, a psychiatrist at the University of Kansas Medical Center, treated defendant in 1972 while he was hospitalized at the center for a month, and again in 1973 when he was readmitted because of a relapse. The doctor also diagnosed defendant as a paranoid schizophrenic during his stay at the medical center. Although the doctor testified that a paranoid schizophrenic can know his acts are wrong and against the law, based upon his observations of defendant in 1972 and 1973, he did not believe defendant knew right from wrong at the time of the crime.

The state's one medical expert witness, Dr. William McKnelly, a psychiatrist at the University of Kansas Medical Center, could

not arrive at a firm conclusion. The state admits Dr. McKnelly was unable to form an opinion as to the ability of defendant to distinguish right from wrong at the time of the shooting. The state relies upon other evidence, lay facts and testimony to prove defendant's sanity. The fact that when defendant approached Rosen he had a handgun concealed· underneath a towel, that he fled from the scene of the shooting, and that in flight he discarded a pair of sunglasses and a green velvet cap which were later found by police officers, indicates he knew what he was doing was wrong. The state contends the concealment of the gun and the discarding of articles of clothing, plus the fact defendant ran from the scene of the crime, can be inferred to presume guilty knowledge of wrongdoing. The state argues that if a person commits a wrong he has no reason to flee if he does not realize what he has done is wrong. The state also notes defendant aimed his gun at the officers when they tried to capture him. In addition, several persons testified to having normal intelligent conversations with defendant about the time of the killing, thereby casting doubt on the persuasiveness of the medical testimony finding defendant to be in a delusional state.

Although the medical experts are unanimous in their diagnosis of defendant, this court does not treat medical testimony as conclusive merely because it is not disputed by other medical testimony. *State v. Chase,* 206 Kan. at 362. The testimony of nonexpert witnesses who observed the actions of the accused immediately before, during and after the shooting, may be considered by the jury along with testimony from expert witnesses. *State v. Sagebiel,* 206 Kan. 482, 489, 480 P.2d 44 (1971). In our judgment, the lay facts and testimony offered by the state were sufficient to sustain its burden of proof and send the question of defendant's sanity to the jury.

Defendant contends the trial court erred in not allowing defense counsel to place into evidence the testimony of a deputy sheriff who witnessed a delusional act of defendant during the trial. Defendant contends the testimony would have aided the jury in the determination of his guilt or innocence.

Defense counsel attempted to introduce testimony showing that during a trial recess, while defendant and a sheriff's deputy were alone in the courtroom, defendant tried to commit suicide by jumping out of a window, claiming the "voices" were telling

him to jump. Defendant believes this testimony is relevant to the continuing condition of his mind and illustrates a continual pattern of behavior. The trial court concluded the evidence was not proper and declined its admission. Because the evidence was only cumulative to other acts of defendant's bizarre behavior, we cannot give it the significance required to hold its exclusion resulted in prejudicial error.

Defendant further argues that the testimony of Dr. McKnelly was not proper rebuttal testimony, but it should have been offered in the state's case in chief or not received at all. Defendant argues his sanity was put into issue by the filing of his notice to rely on the defense of insanity. He relies on *State v. Lamb,* 209 Kan. 453, 473, 497 P.2d 275 (1972), in which we stated if a defendant's mental responsibility for crime is put in issue, it becomes an essential issue which must be proved by the prosecution beyond a reasonable doubt. This point was discussed in *State v. Nemechek,* 223 Kan. at 767-68, in which we stated:

"The prosecution is never required to introduce evidence of sanity until some evidence is introduced which, if believed by the jury, could raise a reasonable doubt as to a defendant's sanity at the time the offense was committed. . . . The term 'evidence,' however, does not include the insanity plea or opening statements. Neither rebuts the presumption of sanity. . . ."

Following our holding in *Nemechek,* we dismiss this argument.

Defendant also contends that Dr. McKnelly, while testifying in rebuttal and on direct examination, did not properly offer an expert opinion concerning the sanity of defendant at the time of the crime. He bases this argument on the belief that since the state's question was not phrased in the form of medical probability or certainty the doctor's answer was of a speculative or conjectural nature and therefore inadmissible. Defendant does not question the witness's qualifications to testify as an expert. We examined this point in *Nunez v. Wilson,* 211 Kan. 443, 507 P.2d 329 (1973), and *Rowe v. Maule Drug Co.,* 196 Kan. 489, 413 P.2d 104 (1966). Both cases rejected the argument that the particular words used in either the questions or the answers determine whether the testimony is probative enough to be considered by the jury. Rather than dwell on semantics, we look to whether the testimony amounted to an honest expression of professional opinion. *Nunez v. Wilson,* 211 Kan. at 447; *Rowe v. Maule Drug Co.,* 196 Kan. at 494-95.

We have examined the record and find that much of Dr. McKnelly's testimony was a narration of the interview he conducted with defendant after the shooting. The only question that might pertain to defendant's mental state was answered unequivocally and was not of a conjectural nature. The remainder of the doctor's testimony reflects his inability as a psychiatrist to determine whether defendant knew right from wrong at the time of the crime. The fact Dr. McKnelly could not form a professional opinion as to this matter does not render his testimony inadmissible. In *Nunez v. Wilson,* 211 Kan. at 446, we noted evidence of probative value should not be excluded from the jury's consideration merely because a medical expert cannot state a fact with absolute certainty. We conclude the testimony of Dr. McKnelly reflected an honest expression of his professional opinion; thus, it was admissible.

Defendant's final issue on appeal attacks the *M'Naghten* rule as an outmoded concept based upon an entirely obsolete and misleading conception of the nature of insanity. Defendant urges the court to abandon the rule in favor of the ALI test. This proposal was thoroughly discussed and rejected in *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977). See also *State v. Nemechek,* 223 Kan. at 769. We find this point without merit.

The judgment is affirmed.

PRAGER, J., dissenting: I respectfully dissent for the reasons set forth in my dissent in *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977). Since the time of that decision, yet another state has joined the increasing majority of states rejecting the outmoded *M'Naghten* test. In *People v. Drew,* 22 Cal. 3d 333, 583 P.2d 1318, 149 Cal. Rptr. 275 (1978), the California Supreme Court recognized "the continuing inadequacy" of the *M'Naghten* standard and adopted the test proposed by the American Law Institute's Model Penal Code.

I would reverse the judgment and remand the case for a new trial on the issue of the defendant's sanity under the ALI standard for determining legal insanity.