No. 68,451

STATE OF KANSAS, *Appellee*, v. TYRONE L. BAKER, SR., *Appellant*.

(877 P.2d 946)

Opinion filed July 8, 1994.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Gerald E. Wells*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Tyrone L. Baker, Sr., appeals his jury trial convictions of two counts of first-degree murder (K.S.A. 21-3401); two counts of aggravated kidnapping (K.S.A. 21-3421); and one count of aggravated assault (K.S.A. 21-3410), as well as the sentences imposed thereon.

The events giving rise to these Douglas County convictions commenced in Shawnee County. During the evening hours of December 3, 1989, defendant broke a window in the Topeka residence of Ida Mae Dougherty and entered. Ms. Dougherty was killed. The following morning, two neighbors, Verne Horne and Lester Haley, became concerned with Ms. Dougherty's welfare and, using Haley's key, entered her residence. Both were taken prisoner by defendant as was Haley's wife, Nancy, who later came over to check on the situation. Defendant forced the three neighbors into Ms. Dougherty's automobile and drove them to rural

Douglas County. By virtue of these events, defendant was convicted in Shawnee County of first-degree murder, aggravated burglary, conspiracy to commit aggravated burglary, and three counts of kidnapping. We affirmed these convictions in *State v. Baker*, 249 Kan. 431, 819 P.2d 1173 (1991).

The case before us concerns the events occurring thereafter in Douglas County. Baker forced the three neighbors to leave the vehicle and made them walk at gunpoint down a worn track. He then ordered them to lie face down on the ground. The three sat down. Ms. Horne told defendant she "could not lie down, that whatever he had to do, he would have to do to my face." Ms. Horne maintained a conversation with defendant and, apparently, convinced him that Ms. Dougherty might not be dead and that, accordingly, he had no reason to kill them. Defendant then left to check on the matter after being assured by Ms. Horne that the three captives would wait one hour for his return.

The Haleys were physically infirm. After the sounds of the Dougherty vehicle died away, Ms. Horne told the Haleys to hide and she would go for help. She had difficulty finding help, but ultimately obtained a ride in a passing vehicle. Ms. Horne directed law enforcement officers to the area where she had left the Haleys, but they were no longer there. On December 5, 1989, the bodies of the Haleys were found about three miles from that location but still in Douglas County. The cause of death in each instance was bullet wounds. Defendant was charged and convicted in Douglas County with two counts of first-degree murder, two counts of aggravated kidnapping, and aggravated assault of Verne Horne. Defendant appeals therefrom.

## DOUBLE JEOPARDY AND MULTIPLICITY

For his first issue, defendant contends that the Douglas County prosecution for the aggravated kidnapping of the Haleys was barred by the double jeopardy clauses of the United States and Kansas Constitutions as he had previously been convicted of kidnapping these individuals in Shawnee County. He further argues the aggravated kidnapping charges were multiplicitous.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be

twice put in jeopardy of life or limb." The double jeopardy clause has been made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969). The Fifth Amendment guaranty against double jeopardy provides separate constitutional protection against multiple prosecutions for the same offense and against multiple punishments for the same crime. *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969).

Section 10 of the Kansas Constitution Bill of Rights also provides a double jeopardy protection ("No person shall be . . . twice put in jeopardy for the same offense."). In *State v. Mourning,* 233 Kan. 678, 679, 664 P.2d 857 (1983), we stated:

"Under the doctrine of double jeopardy a person cannot be put twice in jeopardy for different degrees of the same offense arising out of a single act. Stated another way, the State may not split a single offense into separate parts, and where there is a single wrongful act, such act will not furnish the basis for more than one criminal prosecution."

Whether the offense is the "same offense" as to double jeopardy protection is a matter of state law. See *Brown v. Ohio,* 432 U.S. 161, 167, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977).

In *State v. Grissom,* 251 Kan. 851, Syl. ¶ 12, 840 P.2d 1142 (1992), we stated the rules with regard to multiplicity:

"Multiplicity exists if the State uses a single wrongful act as the basis for multiple charges. Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other. Charges are also not multiplicitous if the offenses occur at different times and in different places."

If there is a break in the action, or if offenses occur at separate times and in separate places, the charges are not multiplicitous. *State v. Smith,* 254 Kan. 144, Syl. ¶ 1, 864 P.2d 709 (1993).

The determinative question in this issue is whether each victim was kidnapped twice (once in each county), or whether one continuous kidnapping of each of the two victims occurred. Defendant argues that by virtue of (1) the physical infirmities of the Haleys and (2) their promises to remain at the same place for one hour, they were in the status of constructive capture after defendant drove away to check on Ms. Dougherty. This is a novel concept for which defendant cites no authority. The State argues

that the Shawnee County kidnapping of the Haleys ended when defendant drove away. The Haleys' recapture by defendant and their transportation to another location some miles away constituted a second kidnapping of the same two individuals which occurred wholly within Douglas County. We agree with the State.

When defendant drove away, there was a break in the action which ended the first kidnapping. The Haleys could have fled successfully, hidden, or been aided. None of these options occurred, but until their recapture they were free. This was a significant break in the events.

In *State v. Smith*, 254 Kan. 144, defendant and codefendants believed they had beaten their victim to death in defendant's home. They moved the victim's body to a car to dispose of it in a nearby sand pit. En route, they stopped to get gas. At the gas station the victim, who was in the back seat of the car, sat up and cried out. They left the gas station and subsequently stopped the car. The victim jumped out, only to be deliberately run over by the automobile. The victim survived. 254 Kan. at 146-48. Defendant was convicted of, *inter alia,* two counts of attempted second-degree murder. She appealed, contending the two attempted second-degree murder charges were multiplicitous. We found that the acts which constituted the attempted second-degree murder at defendant's house were separate and distinct from those that occurred at the sand pit, that they were committed at different times and at different places, did not arise out of the same wrongful act, and were, therefore, not multiplicitous. 254 Kan. at 151. See *State v. Garnes*, 229 Kan. 368, 624 P.2d 448 (1981).

We conclude each of the Haleys was the victim of two separate kidnappings. Defendant's convictions of the aggravated kidnapping of each in Douglas County were not violative of the double jeopardy clauses contained in either the federal or state constitutions, and there was no multiplicity among the kidnapping charges.

## COMPULSORY JOINDER

For his next issue, defendant contends that, because the various offenses committed in two counties "were part and parcel of the

same continuous criminal episode," they could have been prosecuted in a single action in Shawnee County and that the State's failure to do so was violative of K.S.A. 21-3108, which provides in pertinent part:

"(2) A prosecution is barred if the defendant was formerly prosecuted for a different crime, or for the same crime based upon different facts, if such former prosecution:

(a) Resulted in either a conviction or an acquittal and the subsequent prosecution is for a crime or crimes of which evidence has been admitted in the former prosecution and which might have been included as other counts in the complaint, indictment or information filed in such former prosecution or upon which the state then might have elected to rely; or was for a crime which involves the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution, or the crime was not consummated when the former trial began."

Three elements must be present to bar a subsequent prosecution pursuant to K.S.A. 21-3108. First, the prior prosecution must have resulted in a conviction or an acquittal; second, evidence of the present crime must have been introduced in the prior prosecution; and, third, the charge in the second prosecution must have been one which could have been charged as an additional count in the prior case. *State v. Brueninger*, 238 Kan. 429, Syl. ¶ 2, 710 P.2d 1325 (1985); *State v. Freeman*, 236 Kan. 274, 286, 689 P.2d 885 (1984); *State v. Fisher*, 233 Kan. 29, 32, 661 P.2d 791 (1983); *State v. Mahlandt*, 231 Kan. 665, Syl. ¶ 2, 647 P.2d 1307 (1982).

The object of K.S.A. 21-3108(2)(a) is to prevent the prosecution from proving a crime in a trial in which the crime is not charged, and then in effect retrying a defendant for the same offense in a trial where it is charged. *State v. Brueninger*, 238 Kan. 429, Syl. ¶ 3.

The State concedes that the first elements were satisfied: (1) convictions occurred in the Shawnee County case, and (2) evidence of the Douglas County crimes was introduced in the Shawnee County trial. The State disagrees that the third element has been satisfied, that is, that any of the crimes charged in Douglas County could have been included in the Shawnee County prosecution.

We agree with the State as to the aggravated kidnapping and murder convictions. As noted in the preceding issue, there was a clear break in the action. The Shawnee County kidnappings ended and the ultimate recapture of the Haleys constituted a second kidnapping of each which became aggravated kidnapping upon the murder of each of the respective victims. Thus, the aggravated kidnappings and murders occurred wholly within Douglas County and could not have been included in the Shawnee County prosecution.

This conclusion is also consistent with K.S.A. 22-2614, which provides:

"A person charged with the crime of kidnapping may be prosecuted in any county in which the victim has been transported or confined during the course of the crime."

The Shawnee County kidnappings might have been charged in Douglas County under the statute, but the Douglas County aggravated kidnappings and murders occurred wholly within Douglas County and could only be prosecuted in Douglas County.

A different result must be reached, however, as to the aggravated assault conviction relative to Ms. Horne. This occurred while Ms. Horne was, herself, still a kidnap victim and before the break in the action. She, along with the Haleys, was forced to walk down the lane in Douglas County and threatened with the gun while seated. The State categorizes the car ride itself as a sufficient break in the action to require prosecution for the aggravated assault in Douglas County. We do not agree. The assault was part of the Horne kidnapping and could have been prosecuted in Shawnee County. We must, under the mandate of K.S.A. 21-3108(2)(a), reverse the aggravated assault conviction.

## LIMITING INSTRUCTION

The whole pertinent scenario of events occurring in Shawnee County was introduced in evidence in the trial herein. For his third issue, defendant contends the trial court erred in admitting the same as part of the res gestae and refusing to give a requested limiting instruction under K.S.A. 60-455.

K.S.A. 60-455 permits the introduction of evidence of other crimes or civil wrongs for limited purposes and provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Generally where evidence of other crimes is admitted solely pursuant to K.S.A. 60-455, a limiting instruction should be given. *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974). This is logical as evidence, otherwise inadmissible, is being admitted for a limited purpose. The jury must be advised of the limited purpose for which it may consider such evidence.

Evidence admitted as a part of the res gestae is in a quite different category.

Evidence that has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction and is not rendered inadmissible because it may disclose other or independent offenses. The law allows the admission of evidence as part of the res gestae of acts made before, during, or after the principal event. *State v. Bowman*, 252 Kan. 883, Syl. ¶¶ 2, 5, 850 P.2d 236 (1993). If the evidence is a part of the res gestae of the offenses for which a defendant is being tried, such evidence may be introduced independent of K.S.A. 60-455. *State v. Gilder*, 223 Kan. 220, 228, 574 P.2d 196 (1977).

Acts done or declarations made before, during or after the happening of the principal fact may be admissible as part of the res gestae where they are so closely connected with it as to form in reality a part of the occurrence. Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish. *State v. Davis*, 236 Kan. 538, 539, 694 P.2d 418 (1985).

The Shawnee County events, including the murder of Ms. Dougherty and the kidnappings of the three victims, explain and are necessary to the jury's understanding of why defendant and his three captives were on the isolated Douglas County road in

the first place, the argument made by Ms. Horne to defendant that Ms. Dougherty might still be alive, defendant's leaving the scene to check on her, the need to hide and/or seek help, and the threat defendant was to the kidnap victims. The Shawnee County events were so much a part of the subsequent Douglas County events that the latter could not be fully understood without the inclusion of the former. This is a classic res gestae situation.

In *State v. Redford*, 242 Kan. 658, 750 P.2d 1013 (1988), defendant kidnapped, raped, sodomized, and brutalized a former girlfriend over a 10-day period, believing she had stolen money and drugs from him. On appeal, defendant contended the trial court erred in failing to give a limiting instruction to the jury concerning evidence of prior drug crimes committed with the victim and others. 242 Kan. at 665. We rejected this argument, stating:

" 'Res gestae evidence is that evidence which does not constitute a portion of the crimes charged but has a natural, necessary or logical connection to the crime.' *State v. Peck*, 237 Kan. 756, Syl. ¶ 2, 703 P.2d 781 (1985). The evidence of Redford's drug dealings had a logical connection to the case in explaining why events happened, both according to Donna's testimony and according to Redford's testimony. The evidence is thus res gestae and no limiting instruction is necessary. *State v. Peterson*, 236 Kan. 821, 828-29, 696 P.2d 387 (1985); *State v. Ferris*, 222 Kan. 515, 517, 565 P.2d 275 (1977)." 242 Kan. at 666.

We note the trial court had previously admonished the jury that the Shawnee County case was not being retried in the Douglas County action and invited defense counsel to argue accordingly in their closing arguments.

We conclude there was no error in either the trial court's admission of this evidence as a part of the res gestae or the court's refusal to give a limiting instruction under K.S.A. 60-455.

## SUFFICIENCY OF EVIDENCE

For his next issue, defendant contends that the evidence was insufficient for a jury to find beyond a reasonable doubt that defendant was sane at the time of the crimes. In the alternative, defendant argues that the evidence clearly indicates that he lacked the capacity at the time the acts were committed to form the

requisite specific intent to commit first-degree murder or aggravated kidnapping.

The appellate standard of review is clear. When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt. *State v. Van Winkle*, 254 Kan. 214, Syl. ¶ 5, 864 P.2d 729 (1993).

At trial, defendant relied upon the defense of insanity and diminished capacity. The jury was instructed on the *M'Naghten* test for insanity. The *M'Naghten* test/rule is that an accused is to be held not criminally responsible (1) where the accused does not know the nature and quality of the accused's act, or in the alternative, (2) where the accused does not know right from wrong with respect to that act. We adopted the *M'Naghten* test in *State v. Nixon*, 32 Kan. 205, Syl. ¶ 1, 4 Pac. 159 (1884), and have steadfastly adhered to that test. See *State v. Wood*, 235 Kan. 915, 921, 686 P.2d 128 (1984), and cases cited therein.

The jury was instructed on diminished capacity. Evidence of a defendant's diminished capacity to commit a crime is admissible to negate specific intent but not to remove criminal responsibility. *State v. Jackson*, 238 Kan. 793, Syl. ¶ 1, 714 P.2d 1368, *cert. denied* 479 U.S. 821 (1986). See *State v. Friberg*, 252 Kan. 141, 143, 843 P.2d 218 (1992); *State v. Maas*, 242 Kan. 44, 52, 744 P.2d 1222 (1987).

Defendant's medical expert, Dr. Gilbert Parks, a psychiatrist, testified that defendant suffered from paranoid schizophrenia and was legally insane at the time of the Haleys' murders. On cross-examination, the doctor admitted much of his conclusion was based on defendant's inability to recall the criminal acts. Defendant testified that he had a friend other people could not see who took over from time to time and that he, defendant, did not know how the Haleys were killed.

The State called Dr. Herbert Modlin, a psychiatrist, who testified defendant had the mental capacity to think and deliberate about his actions, could reason, and was not insane during the

time period of the crimes. Nonexpert witnesses testified as to defendant's words, conduct, and demeanor during the period of time in question. Particularly significant among these witnesses was the testimony of Ms. Horne and Lisa Pfannenstiel. Ms. Horne observed defendant over a period of time—from her capture at the Dougherty residence until defendant's departure from the scene in Douglas County. She intentionally engaged him in conversation and reasoned with him, an approach which probably saved her life. Her testimony was directly contrary to the picture the defense was attempting to paint of a legally insane man or one so deficient in reason as to be unable to form the requisite criminal intent.

Lisa Pfannenstiel, defendant's accomplice herein, also gave evidence highly damaging to defendant's insanity/diminished capacity claims. She also testified that he told her he killed the Haleys but that Ms. Horne had gotten away.

It was for the jury to consider and weigh the evidence and testimony of both expert and nonexpert witnesses relative to this issue. In *State v. Sanders*, 225 Kan. 147, 153, 587 P.2d 893 (1978), the only expert testimony introduced concluded that defendant was legally insane at the time of the commission of the crimes. In affirming the convictions, we stated:

"Although the medical experts are unanimous in their diagnosis of defendant, this court does not treat medical testimony as conclusive merely because it is not disputed by other medical testimony. *State v. Chase*, 206 Kan. at 362. The testimony of nonexpert witnesses who observed the actions of the accused immediately before, during and after the shooting, may be considered by the jury along with testimony from expert witnesses. *State v. Sagebiel*, 206 Kan. 482, 489, 480 P.2d 44 (1971). In our judgment, the lay facts and testimony offered by the state were sufficient to sustain its burden of proof and send the question of defendant's sanity to the jury."

Viewing the evidence in the light most favorable to the prosecution, as we are required to do, we are convinced that a rational factfinder could have found beyond a reasonable doubt that defendant was not legally insane and that he possessed the necessary specific criminal intent at the time of the commission of the crimes.

## PSYCHIATRIST'S REPORT

For his next issue, defendant contends the trial court's refusal to admit the written report of Dr. Gilbert Parks, its medical expert, into evidence denied him his constitutional right to present his defense.

In denying the admission of the report, the trial court stated:

"My feeling is that reports like this, when they go to the jury, in effect, let a witness testify twice, and put undue influence upon that witness's testimony. I think the jury has heard now for a day and a half what this witness knows about this case. They have heard it on direct and they have heard it on cross examination. I don't find adding his report done a year ago is going to add anything to their knowledge of the case. I think it would be wrong to admit it and I will not."

Defendant's position is that the State damaged Parks' credibility during its cross-examination and the defense wanted to introduce the report as a means of damage control. This method was apparently preferred to redirect examination of the witness as it offered no further exposure to cross-examination.

In support thereof, defendant cites *State v. Humphrey*, 252 Kan. 6, 845 P.2d 592 (1992), where we reversed a murder conviction on the basis the trial court had erroneously excluded expert testimony on the effect of sleep deprivation. In *Humphrey*, no testimony was permitted on the subject as opposed to excluding a written report offered after a witness has exhaustively testified on the subject.

The admissibility of the written report was a matter of judicial discretion, and the trial court will not be reversed on appeal absent a showing of an abuse of discretion. See *State v. Humphrey*, 252 Kan. 6, Syl. ¶ 2; *State v. Colwell*, 246 Kan. 382, Syl. ¶ 7, 790 P.2d 430 (1990); *State v. Graham*, 246 Kan. 78, Syl. ¶ 3, 785 P.2d 983 (1990). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Reed*, 254 Kan. 52, Syl. ¶ 3, 865 P.2d 191 (1993).

In the circumstance herein, we find no error or abuse of discretion in the trial court's exclusion of the written report.

## REFUSAL TO COMMIT

For his final issue, defendant contends the trial court abused its discretion when it sentenced defendant in lieu of committing him to the State Security Hospital under K.S.A. 22-3430. The statute has been amended since defendant's sentencing but not in any manner affecting the issue herein. The pertinent portions of K.S.A. 1993 Supp. 22-3430 are as follows:

"(a) If the report of the examination authorized by K.S.A. 22-3429 and amendments thereto shows that the defendant is in need of psychiatric care and treatment, that such treatment may materially aid in the defendant's rehabilitation and that the defendant and society are not likely to be endangered by permitting the defendant to receive such psychiatric care and treatment, in lieu of confinement or imprisonment, the trial judge shall have power to commit such defendant to: (1) The state security hospital or any county institution provided for the reception, care, treatment and maintenance of mentally ill persons, if the defendant is convicted of a felony . . . .

. . . .

"(c) The defendant may appeal from any order of commitment made pursuant to this section in the same manner and with like effect as if sentence to a jail, or to the custody of the secretary of corrections had been imposed."

At the time of sentencing, defense counsel requested the court to commit defendant to the State Security Hospital in lieu of sentencing under authority of the statute. The trial court declined, and this determination is the basis for this issue. In his brief, defendant argues mainly why such commitment would have been appropriate.

In *State v. Adkins*, 236 Kan. 259, 689 P.2d 880 (1984), Adkins contended (as defendant herein contends) that the refusal of the trial court to commit him under 22-3430 constituted a breach of judicial discretion. In Syl. ¶ 1 of the opinion, we stated:

"K.S.A. 22-3430 is discussed and held (a) to be a conditional grant of authority to a trial judge to commit a criminal defendant to a state mental institution in lieu of imprisonment; and (b) the refusal of a trial court to commit a criminal defendant to a state mental institution in lieu of imprisonment is wholly a matter of trial court discretion and such refusal is not reviewable on appeal."

K.S.A. 1993 Supp. 22-3430 gives authority to the trial court to commit a criminal defendant to a state mental institution in lieu

of imprisonment and provides that *a defendant may appeal from any order of commitment*. The refusal of a trial judge to commit a defendant to a state mental institution in lieu of imprisonment is, accordingly, not reviewable on appeal.

In conclusion, we affirm the convictions and sentences imposed as to the first-degree murders and aggravated kidnappings. The conviction and sentence as to aggravated assault is reversed. This leaves in place the four life sentences to be served consecutively to each other and consecutive to the sentences imposed in the Shawnee County case.

The judgment is affirmed in part and reversed in part.