No. 76,037

STATE OF KANSAS, *Appellee*, v. LARRY J. GRIFFIN, *Appellant*.
(941 P.2d 941)

Opinion filed July 11, 1997.

*Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Michael F. McElhinney*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a direct criminal appeal from convictions of premeditated first-degree murder, attempted first-degree murder, and unlawful possession of a firearm. The defendant, Larry J. Griffin, claims that the exclusion of a police report contradicting the

trial testimony of an eyewitness requires reversal. The contents of the police report were read to the jury. The defendant also contends that juror misconduct requires reversal. Finding no reversible error, we affirm.

The defendant, his girlfriend, and several friends gathered at an apartment located in the Highland Park apartment complex in Topeka. Tony Pead rode through the apartment complex on his bike and thought he heard the group speaking to him. Pead challenged them, rode around in a circle exchanging comments with the men on the porch, and then rode away.

When the defendant left to drive his girlfriend home, Pead returned with several of his friends and attacked three of the defendant's friends remaining on the porch. The defendant's friends suffered several injuries and after Pead's group left, an ambulance was called for one person who received a broken jaw. Michael Gibbs, who had stayed inside to avoid the fight, called the defendant, who then returned to the Highland Park apartment complex.

The trial testimony presents two conflicting versions of the incident giving rise to the charges. The State sought to prove that the defendant and his friends were seeking revenge. The defendant and two friends left the Highland Park complex for the neighboring apartment complex, Deer Creek, in the defendant's car. They encountered Pead and Shawn Davis sitting on a wall near a basketball court. Primarily through the testimony of Pead and an eyewitness who viewed the events from his bedroom window above the basketball court, the State established that the defendant approached Pead and Davis. Words were exchanged. The defendant turned away from Pead and Davis, pulled out a gun, turned back, and shot Davis. As Pead ran from the basketball court, the defendant shot him as well. One of the defendant's companions struck the fallen Davis in the head with a brick. Davis died from his wounds.

The defendant testified that he returned to the Highland Park complex and wanted to talk to Pead and Davis about the reasons they had attacked his friends. He decided to drive his friends home by way of the Deer Creek complex. They encountered Pead and Davis, and the defendant approached to talk to them. An argument

arose. He turned his back at one point, and shots rang out. The defendant and his friends ran, failing to see who shot the gun.

The defendant claimed that Lamar Tibbs, a person belonging neither to Pead's nor to the defendant's group, shot Davis. To support this theory, he called two witnesses. Crystal Perry testified that Tibbs arrived at her house following the shooting and asked her to hide his gun. The second witness, Florence Evans, was interviewed by the police 2 days after the incident. She told the police that she saw Tibbs shoot Davis. At trial, she denied telling this to the police. Defense counsel handed her a copy of the police report and three separate times asked her if she did not tell the police that Tibbs shot Davis. On each occasion, Evans denied she told the police that Tibbs shot Davis.

The defendant also called Officer Walter Wywadis, who read verbatim the police report regarding Evans' statement that she saw Tibbs shoot Davis. The defendant's motion to admit the written police report was denied.

### Exclusion of the Written Report

The defendant contends that the trial court erred by excluding the police report detailing the interview of Evans. He argues that the admission of the police report was essential to challenge the credibility of Evans, as well as to provide evidence that another person committed the crime. He argues that the report was admissible pursuant to K.S.A. 60-422(b), as extrinsic evidence of a prior contradictory statement. Further, he argues that the admission of the physical report was not cumulative to the officer's reading the report into the record. He insists that the exclusion of the report substantially hindered his ability to present a complete defense.

The defendant called the officer who had the report and the officer who recorded Evans' verbal statement. Both identified the report as the verbal statement taken from Evans 2 days after the incident. The report was marked as Defendant's Exhibit No. 2. Immediately after the exhibit was marked, the judge said, "I'll allow the testimony." Defense counsel asked the officer to read the report. The officer then read the report verbatim to the jury. Counsel

then asked that the defendant's Exhibit 2 be admitted into evidence. The prosecution objected, stating, "[I]t's already been read. No need to send it back." The judge agreed, saying, "I'll allow the testimony, but not the physical document." Defense counsel responded, "All right."

The evidence of Evans' earlier statement to the police was properly admitted under the provisions of K.S.A. 60-422. The defendant acknowledges that the police report was admitted by the verbatim reading of the report to the jury. Nevertheless, the defendant argues that the written report itself should have been admitted.

The standard we apply in this case is:

"The admissibility of the written report was a matter of judicial discretion, and the trial court will not be reversed on appeal absent a showing of an abuse of discretion. [Citations omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." [Citation omitted]. *State v. Baker*, 255 Kan. 680, 691, 877 P.2d 946 (1994).

The defendant cites *State v. Humphrey*, 252 Kan. 6, 845 P.2d 592 (1992), wherein we reversed a murder conviction on the basis that the trial court erroneously excluded expert testimony on the effect of sleep deprivation. However, the *Baker* court noted that in *Humphrey*, no testimony was permitted on the subject as opposed to excluding a written report offered after a witness has exhaustively testified on the subject. 255 Kan. at 691. In *Baker*, the defendant argued that the trial court's refusal to admit a written report of its medical examiner into evidence denied him his constitutional right to present his defense. The trial court excluded the written report because the jury heard the testimony on direct and cross-examination. The court reasoned that allowing the report into evidence would let a witness testify twice and put undue influence upon that witness' testimony.

The evidence the defendant complains was erroneously excluded was, in fact, admitted when the trial court permitted the officer to read the report verbatim to the jury. The exclusion of

the written report, under the circumstances in this case, does not establish an abuse of discretion.

The defendant's reliance on *State v. Murrell,* 224 Kan. 689, 585 P.2d 1017 (1978), is misplaced. In *Murrell,* the defendant sought to impeach a critical prosecution witness by the use of a prior inconsistent written statement the witness had made. Notwithstanding the clearly contradictory nature of the statement, the trial court refused counsel's request to use the statement either during cross-examination or by introduction of the statement into evidence. In the case we now consider, the trial court permitted the use of the prior report during examination of the witness and admitted the statement into evidence.

## Juror Misconduct

Following his conviction, the defendant filed a motion for a new trial on the basis of juror misconduct. The defendant attached the following affidavit from Kristina Kampsen:

"I was sitting outside, in front of the courthouse, on Wednesday afternoon of the jury trial of Larry J. Griffin, Jr., smoking a cigarette. I saw a young blond female juror whose position was in the front row center of the jury box; a black female juror, and an older white female wearing glasses who was normally seated in the rear row corner chair, talking while they were on break. I heard the blonde juror say 'the witness and participants were all old enough to remove themselves from the situation'; one of the other two stated 'yes,' and I saw all three nod their heads 'yes.' "

No other evidence of juror misconduct was offered. The trial court denied the defendant's motion.

In *State v. Hopkins,* 257 Kan. 723, 725, 896 P.2d 373 (1995), we said:

"The granting of a new trial is a matter which lies within the sound discretion of the trial court, and appellate review of a trial court's decision denying a new trial is limited to whether the trial court abused its discretion. [Citation omitted.]

. . . '[J]uror misconduct in civil and criminal cases is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice has the burden of proof.' [Citation omitted.]"

The defendant argues that members of the jury violated the trial court's admonishment made pursuant to K.S.A. 22-3420(2), which provides:

"If the jury is permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court that it is their duty not to converse with, or allow themselves to be addressed by any other person on any subject of the trial, and that it is their duty not to form or express an opinion thereon until the case is finally submitted to them, and that such admonition shall apply to every subsequent separation of the jury."

He contends that the jurors discussed the merits of the case before all evidence had been submitted. Finally, he contends that even if the trial court correctly concluded the affidavit alone did not support the granting of a new trial, the trial court should have inquired whether the misconduct had an impact on the jury's deliberations.

We recently discussed the provision of K.S.A. 22-3420(2) in *State v. Hays*, 256 Kan. 48, 60, 883 P.2d 1093 (1994). We examined whether the trial court's decision to allow jurors to submit written questions to witnesses was proper. Part of our focus in *Hays* was whether the jurors' discussion concerning the questions to be asked was appropriate. We stated:

"The fact that the jurors discussed among themselves what questions to ask is more troubling. While K.S.A. 22-3420(2) does not specifically preclude the jurors from discussing the case among themselves, the jurors do have the duty to keep an open mind until the case is submitted to them for deliberation. The jury's questions indicate that the jurors were discussing the evidence thoroughly enough during the morning recess that they realized they had some questions. While jurors clearly cannot refrain from assimilating and evaluating the evidence as it accumulates during trial, the jurors should not begin deliberating on the case until it is submitted to them. In *Spitzer v. Haims & Co.*, 217 Conn. at 545, the Connecticut court stated, 'We properly expect jurors to refrain from deliberating on a case until it is submitted to them. [Citation omitted.] Deliberation in this sense, however, means articulating and exchanging views, albeit preliminary, with one's fellow jurors. [Citation omitted.] It does not mean the absence of thought, however preliminary.'" 256 Kan. at 60.

The affidavit in this case falls short of the discussion that occurred in *Hays*. We do not believe that the affidavit provides a basis for concluding that the three jurors began deliberation before the case was submitted to the entire jury. The jurors did not discuss the question of the defendant's guilt or innocence, and the statements of the jurors are not inconsistent with the innocence of the defendant.

Even assuming that the discussion between the three jurors was preliminary deliberation, there is no showing that such deliberation affected the outcome of the trial. The misconduct, if any, is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice has the burden of proof. The defendant fails to meet his burden of proof.

In *Saucedo v. Winger*, 252 Kan. 718, 850 P.2d 908 (1993), we said:

"The granting of a new trial or recalling the jury to answer for misconduct is within the sound discretion of the trial court. K.S.A. 60-259. See *State v. Macomber*, 244 Kan. 396, 407, 769 P.2d 621 (1989).

. . . .

". . . Where a party alleges jury misconduct, the trial judge is required to recall the jury if the judge cannot determine that the evidence supporting the other party is substantial and that the jury misconduct did not relate to a material issue in dispute." 252 Kan. at 729-32.

In this case, the trial court found that the allegations of juror misconduct were neither substantial nor related to the material issue of guilt. The trial court concluded that the defendant failed to carry his burden of showing substantial prejudice. We agree and conclude that the trial court did not abuse its discretion in not conducting further investigation.

Affirmed.