No. 59,917

STATE OF KANSAS, *Appellee,* v. FORREST L. STUKEY, *Appellant.*
(747 P.2d 137)

Opinion filed December 11, 1987.

*Joel W. Meinecke,* of Topeka, was on the brief for appellant.

*Robert T. Stephan,* attorney general, *Gene M. Olander,* district attorney, and *Sue Carpenter,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Forrest L. Stukey appeals from his conviction by a jury of one count of rape (K.S.A. 1986 Supp. 21-3502), contending error in the admission of certain expert testimony.

As the issues on appeal are confined to the admissibility of testimony by the State's expert witness, there is no necessity to recite the facts surrounding the alleged rape of the victim. The prosecution called as a witness Susan Scholl, a forensic examiner employed by the Kansas Bureau of Investigation laboratory. She was examined at length as to her qualifications as a forensic expert and no objections were made to her qualifications and none are asserted on appeal.

As a part of the investigation of the instant case, Ms. Scholl analyzed samples of blood and saliva obtained from the appellant pursuant to court order. She also analyzed specimens collected from the victim utilizing rape kit swabs and procedures and then compared her findings from the two different sources. She testified to the particular attributes or characteristics of

appellant's body fluids and concluded that appellant is a nonsecretor and that his blood is PGM type 1+ and that both are genetically inherited traits. The rape kit analysis revealed semen from a nonsecretor with PGM type 1+ blood. She then testified, over appellant's objection, that approximately 20 percent of the general population are nonsecretors. She also testified on cross-examination that 40.7 percent of the Caucasian population share the PGM type 1+ blood classification. Finally, she testified on both direct and cross-examination that approximately 9% of the population exhibit both characteristics in combination, that is, are both nonsecretors and have PGM subtype 1+ blood. When asked on cross-examination about the basis for the 9 percent figure, Ms. Scholl responded that since the two attributes are independent of one another their respective percentage frequencies were multiplied together, yielding the 9 percent figure. Appellant asserts error in the admission of the testimony relating to the percentage of the population which has either or both characteristics.

The first issue on appeal is whether it was error to admit testimony on the percentage of nonsecretors in the general population and the percentage of persons with PGM type 1+ blood in the Caucasian population. Initially, it should be noted that the admissibility of expert testimony lies within the trial court's discretion, and its determination of the issue will not be reversed on appeal absent a showing of abuse of discretion. *State v. Carr*, 230 Kan. 322, 325, 634 P.2d 1104 (1981), and cases cited therein.

Appellant does not contend that the evidence of his PGM type 1+ blood and of his being a nonsecretor was inadmissible. See *State v. Washington*, 229 Kan. 47, 622 P.2d 986 (1981). He does contend, however, that it was error to allow Ms. Scholl to testify as to the percentage of the population which would have each characteristic and the percentage of the population which would have both, asserting there was an insufficient foundation for the testimony. No explanation of appellant's contention is contained in his brief and his entire argument is that the "figures came in unadorned and unfounded."

The admission of expert testimony is governed by K.S.A. 60-456 *et seq.* K.S.A. 60-456 provides in part:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing, and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission."

We assume the appellant's argument to be that the State failed to present sufficient foundation to show that the 20 percent and 40.7 percent figures were based upon established facts known to the witness. In *Washington*, this court considered the admissibility of similar, if not identical, testimony. This court stated:

"Defendant next challenges the admission of probability testimony offered by Burnau in the form of population percentages with the same blood characteristics as the accused. Expert testimony of mathematical probabilities that a certain combination of events will occur simultaneously is generally inadmissible when based on estimations rather than on established facts. See Annot., Evidence-Probabilities-Criminal Cases, 36 A.L.R.3d 1194; *People v. Collins*, 68 Cal. 2d 319, 66 Cal. Rptr. 497, 438 P.2d 33 (1968); *State v. Sneed*, 76 N.M. 349, 414 P.2d 858 (1966). By contrast, population percentages on the possession of certain combinations of blood characteristics, based upon established facts, are admissible as relevant to identification. See *State v. Rolls*, 389 A.2d 824 (Me. 1978) (EAP enzyme analysis allowed of dried blood found on defendant's pants found to correspond to analysis of rape victim with vaginal laceration); *People v. Gillespie,* 24 Ill. App. 3d 567, 321 N.E.2d 398 (1974); *State v. Coolidge,* 109 N.H. 403, 260 A.2d 547 (1969) (microanalysis of particles taken from victim's clothing and defendant's automobile). Attacks on the validity of the underlying statistics go to the weight of such evidence, not its admissibilty. *State v. Rolls*, 389 A.2d at 824 (percentage based on FBI and Scotland Yard studies challenged as hearsay; held, the objection goes to the weight, not admissibility); accord, *People v. Gillespie,* 24 Ill. App. 3d at 575. *The percentage of population possessing certain blood characteristics has been held to be 'reasonably within [the] expertise' of the forensic expert testifying to blood type analysis. Redd v. State,* 240 Ga. 753, 243 S.E.2d 16 (1978). In the present case, Burnau testified that her percentage statistics were based on population studies published by the American Association of Blood Banking. Based on these studies, the percentage of blacks in the population having certain characteristics was multiplied by the total number of characteristics found, with a finding that 3.1% would have the same combination of proteins and enzymes. The additional factor that defendant was a nonsecretor reduced the percentage to 6/10 of 1%. Any challenge to the reliability of the testing went to its weight, not its admissibility. The trial court did not err in allowing Burnau to testify to this statistical information." 229 Kan. at 58-59. (Emphasis added.)

In *State v. Pearson*, 234 Kan. 906, 678 P.2d 605 (1984), the

appellant asserted error in the admissibility of expert testimony concerning the population frequency of various blood types and enzymes. This court recognized our earlier language in *Washington* and stated:

"This court held in *State v. Washington*, 229 Kan. 47, 59, 622 P.2d 986 (1981), that evidence of population percentages concerning the possibility of certain combinations of blood characteristics, based upon established facts, is admissible as relevant to identification, and that this information is reasonably within the expertise of the forensic expert testifying to blood-type analysis." 234 Kan. at 922.

In the present case, Ms. Scholl, on cross-examination, when questioned about the basis for her testimony that 20 percent of the population are nonsecretors, stated:

"Well, there have been a lot of studies done where known blood and saliva samples were taken from individuals and then tested to determine whether or not an individual, each of those individuals was a secretor or a nonsecretor, and it was found in each of these studies that no more than 20 percent of the case samples turned out to be from nonsecretors. So, I base that numerical value on a lot of different testing that's been done across the country."

In *Washington* and *Pearson* the expert witnesses testified to specific studies upon which they based their opinions as to the percentage figures, while in the present case Ms. Scholl testified that her opinion as to the percentage of nonsecretors was based upon "a lot of studies." The testimony that 40.7 percent of the Caucasian population have PGM type 1+ blood was not supported by reference to any particular studies or authorities but was elicited by appellant on cross-examination.

Is the failure to name and rely upon one or more specific studies fatal to the expert's testimony? We think not. In *Washington* and in *Pearson*, we recognized that knowledge of the percentage of the population possessing certain blood characteristics was "reasonably within the expertise of the forensic expert." Here, Ms. Scholl was clearly qualified as a forensic expert within the field of blood chemistry, and testing for blood types, enzymes and characteristics, and knowledge of the population percentages used here were reasonably within her expertise. We find no abuse of discretion in the admission of her testimony relating to the percentages of the population who are nonsecretors and who have PGM type 1+ blood.

The second issue on appeal is whether the trial court erred in

allowing Ms. Scholl to testify as to the percentage of the population which has, in combination, the factors of being a nonsecretor and PGM type 1+ blood based upon application of what the appellant denominates as the "product rule" of probability. It is a generally accepted rule of statistical analysis that the probability of two or more independent events co-existing is equal to the probability of each event multiplied by the probability of each of the other events. In the present case, Ms. Scholl testified that the characteristics of being a nonsecretor and having the PGM type blood are independent genetic factors. She also testified that approximately 9% of the population has a combination of the two characteristics. She reached this conclusion by multiplying 40.7 percent (the PGM type 1+ percentage) by 20 percent (the non-secretor percentage). Although the actual mathematical calculation would be 8.14 percent, she apparently rounded the figure up to the next higher integer, which would actually work in appellant's favor.

The identical method utilized by Ms. Scholl was approved by this court in *Washington*. In the cases relied upon by appellant as authority for his arguments in this case, the method of multiplying the percentage probabilities, similar to that utilized here, was applied based upon estimates and events which were clearly not scientific facts, and therefore the cases are not at all persuasive. As appellant states in his brief, "[T]he product rule itself was not criticized, its application to the estimates was." Here, the use of a multiplication formula was applied to accepted facts known to the witness. We find no abuse of discretion in the admission of the expert testimony including the evidence based upon the application of the so-called "product rule."

The judgment is affirmed.

PRAGER, C.J., not participating.