No. 62,688

STATE OF KANSAS, *Appellee,* v. LEO D. GRAHAM, *Appellant.*

(785 P.2d 983)

Opinion filed January 19, 1990.

*Shannon S. Crane,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Mary Ann Slattery,* chief deputy district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Leo D. Graham appeals his jury trial conviction of aggravated robbery (K.S.A. 21-3427).

On May 23, 1981, the clerk of a Kansas City convenience store was the victim of a robbery at gunpoint. Removal of all of the money from the cash register triggered a camera which took photographs of the robber. Defendant was subsequently arrested as a result of the photographs. He was tried in December of 1981 but failed to appear on the last day of trial. He was convicted but his whereabouts were unknown until February of 1988 when he was arrested in Missouri and returned to Kansas on a detainer. In July of 1989 he received a 10-20 year sentence and brings this appeal.

The sole issue on appeal is the propriety of the admission of expert testimony relative to certain photographs. In order to understand the issue some additional facts need be set forth. As previously stated, candid photographs were shot of the robber while the crime was in progress in May 1981. Defendant was initially arrested on June 3, 1981. Posed photographs of defendant were taken at that time depicting full face and profile views (commonly called "mug shots").

In December 1981, shortly before trial herein and *at defense counsel's request*, a group assembled at the convenience store involved herein. It included defense counsel, defendant, prosecutor, a police photographer, and a private photographer hired by defendant. Posed photos were taken of defendant in front of the counter by the same store camera and by the retained photographer using his own equipment. In summary then, three sets of photographs are involved at this point: (1) candid robbery shots taken in May 1981; (2) posed mug shots taken in June 1981; and (3) posed crime reenactment photos taken in December 1981.

The main issue at trial was identity. The store clerk positively identified defendant as the robber and this identification is not at issue herein. The State had the photographs of the crime in progress which depict the robber quite clearly. Under such circumstances, for a conviction, the jury would only have to be satisfied the robber photographed could be the defendant. The State and defense each presented an expert photographic witness. One was the last prosecution witness and the other was the first

defense witness, so the two witnesses followed each other sequentially. The police photographer discussed the operation of the store camera, problems of distortion created by different camera angles, and clothing worn by defendant. Based upon his enumerated similarities, he stated the same man was depicted in all three sets of photos. The defense expert testified as to characteristics which may be distorted by cameras. Based upon his enumerated dissimilarities, this expert stated the man shown committing the robbery was not the same man in the mug shots or the reenactment shots.

On appeal, defendant argues no photographic expert testimony was necessary and its admission was error as an invasion of the province of the jury.

K.S.A. 60-456 permits the admissibility of expert opinion evidence as follows:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

. . . .

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

In *State v. Hodges*, 239 Kan. 63, Syl. ¶ 1, 716 P.2d 563 (1986), we held:

"The basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case. Where the normal experience and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible. Two requirements must be present before expert testimony is admissible at trial. First, the testimony must be helpful to the jury. Second, before expert scientific opinion may be received into evidence at trial, the basis of that opinion must be shown to be generally acceptable within the expert's particular scientific field."

An expert's opinion, pursuant to K.S.A. 60-456, is admissible up to the point where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence. *State v. Lash*, 237 Kan. 384, Syl. ¶ 1, 699 P.2d 49 (1985). Although an expert may give an opinion on an

ultimate issue as provided in K.S.A. 60-456(d), such witness may do so only insofar as the witness aids the jury in the interpretation of technical facts or assists the jury in understanding the material in evidence. An expert witness may not pass on the weight or credibility of evidence, for those matters are strictly within the province of the jury. *State v. Moore,* 230 Kan. 495, Syl. ¶ 1, 639 P.2d 458 (1982).

The admissibility of expert testimony lies within the sound discretion of the trial court and its determination will not be reversed on appeal absent a showing of an abuse of discretion. *State v. Stukey,* 242 Kan. 204, Syl. ¶ 1, 747 P.2d 137 (1987).

On appeal, defendant challenges all of the testimony of the State's expert. At trial, the only objection to the witness' testimony was to the ultimate question—whether or not each of the three sets of photos portrayed the same man. As will be recalled, it was defense counsel who set up the scenario as to experts at trial. He first hired a photographer and requested the reenactment of the crime so a new set of photos could be taken as fodder for his expert. If admission of the State's expert testimony was error, so was admission of the defense's expert testimony.

The old saying a picture is worth a thousand words has considerable truth herein. It is difficult to describe and distinguish similar photographs. The store camera sat on a shelf in a nonfixed position. It could be moved to anywhere on the shelf. The angle of the camera was downward to the person being photographed. In the robbery shots, the robber is at more of an angle to the camera than in the reenactment shots. His chin is tucked down, his body is leaning slightly forward, and his right hand (with the gun) extends over the counter. In the reenactment photographs, defendant is standing straight and more squared to the camera with his arms at his sides. The photograph taken by the defense expert is taken from a much lower and closer perspective. The mug shots are close, no angle photos.

Even without the fact that defense counsel set up the expert testimony, we cannot say it was an abuse of discretion to admit any expert photographic testimony. The effect of different angles, perspectives, and other variables as to height, nose shape, weight, etc., is information beyond the normal experience of lay persons. Much latitude must be given to trial courts in this area. We do

conclude, however, that it was an abuse of discretion, under the facts herein, to let the experts give their respective opinions as to whether or not the same man was portrayed in all photos. Obviously, neither the State nor the defense could bring in an expert who would be permitted to state the defendant is the same man shown in the photos of the crime. Yet, the same thing was accomplished herein by taking new photos and having the expert compare those to the crime photos. Such testimony invaded the province of the jury.

Does this improper admission of evidence require reversal? We believe not. The victim made positive identification of the defendant—which identification is unrelated to the photos herein. The victim had an excellent opportunity to study the robber. Further, two opposing expert opinions were expressed which pretty well cancelled each other out. Additionally, it was defense counsel who set up the scenario for the battle of experts. He objected to the ultimate question on identification propounded to the State's witness—but was able to ask an identical question of his own expert. Without reservation, we conclude that there is little, if any, likelihood that this erroneous admission of evidence changed the result of the trial.

The judgment is affirmed.