No. 99,446

STATE OF KANSAS, *Appellee*, v. JULIE STIEBEN, *Appellant*.

(256 P.3d 796)

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 13, 2009. Opinion filed July 29, 2011.

*Christina M. Waugh*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Douglas W. McNett*, of Larned, argued the cause, and *John Sauer*, county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: At about 9:15 in the evening of April 20, 2006, Kansas Highway Patrol Trooper Keefe Hemel was patrolling on Highway 50 west of Dodge City, Kansas. As he was driving west, he en-

countered an east-bound car traveling at 51 miles per hour in a 65 miles-per-hour zone. The approaching car drifted toward the "fog line," or the white right-hand lane marker. Hemel turned around and caught up with the car in order to continue to observe how it was being driven. Over a course of about half a mile, the car crossed the fog line three times. After about 25 seconds, Hemel turned on his emergency lights, and the car pulled over to the side of the highway. A videotape was available of the last few seconds of his following the car and the subsequent events at the side of the road.

Julie Stieben was driving the car. Hemel asked her whether she had been drinking alcohol, because he smelled an odor he associated with alcoholic beverages coming from the car. She said she had not. He observed that her eyes were bloodshot and watery. He asked her to step out of the car for field sobriety testing. Hemel smelled the strong odor of an alcoholic beverage about her as they stood outside her car.

Stieben initially performed a walk-and-turn test, and she failed five indicators, including balance, counting, turning, and foot placement. She also failed a one-leg-stand test. Finally, she failed a horizontal gaze nystagmus (HGN) test. Hemel then placed Stieben under arrest and drove her to the Ford County Detention Center, where she refused to take a blood-alcohol breath test. An inventory search of the car failed to disclose any alcohol or contraband but did reveal the presence of strong-smelling trash and rotting food.

On May 18, 2006, the State filed an information charging Stieben with one count of operating a motor vehicle while under the influence of alcohol, pursuant to K.S.A. 2005 Supp. 8-1567(a)(3), and one count of operating a motor vehicle while improperly driving on a laned roadway, pursuant to K.S.A. 8-1522. On January 19, 2007, Stieben's attorney, Leslie A. Hess, filed a motion requesting that Judge Daniel L. Love disqualify himself from the case pursuant to K.S.A. 20-311d. Following a hearing, Judge Love denied the motion.

Hess then filed an affidavit asserting various negative interactions between Judge Love and herself over the course of more than a year. Hess also filed a motion to suppress the vehicle stop for

lack of probable cause and lack of reasonable suspicion of criminal activity. Judge E. Leigh Hood reviewed the affidavit and found insufficient grounds to remove Judge Love. Following an evidentiary hearing, Judge Love then denied the motion to suppress.

The State elected to file an amended information that omitted the count of improperly driving on a laned roadway. The case proceeded to jury trial, where the only witness was Trooper Hemel. He testified about the driving he had observed and Stieben's performance on the field sobriety tests. He did not testify about the HGN test. A jury found Stieben guilty of operating a vehicle while under the influence of alcohol. The court sentenced Stieben as a third-time offender to 1 year in jail, with all but 90 days suspended, of which she was required to serve 10 days in jail. It also fined her $1,500 and placed her on probation for 1 year.

Stieben took a timely appeal to the Court of Appeals, which affirmed the conviction. *State v. Stieben*, No. 99,446, unpublished opinion filed February 13, 2009. This court granted Stieben's petition for review.

### The Jury Question and the Answer from the Bench

Twenty-eight minutes after it began deliberations, the jury delivered a question to the court. The following discussion took place:

"THE COURT: I was just handed a question from the bailiff. We're in the courtroom. Defendant is present. Both attorneys are here. The question is: 'Did Defendant cross the fog line before the officer turned around?' And, the presiding juror signed this, Laura Shenk. I had that in my notes that Hemel saw the Defendant eastbound, driving slowly and that she crossed the fog lane marker. That's in my notes.

"MS. KUHN: That's what I have.

"MRS. HESS: I mean, I want them to go back to the testimony, Judge, because I don't think she crossed it as he passed her.

"MS. KUHN: My recollection of the testimony is he stated that she was going 51 in a 65 and that she crossed the fog line as he passed her, and then he turned around to follow her, and she crossed it three more times.

"MRS. HESS: Then, I think we need to make sure before we answer that.

"THE COURT: That's my recollection. I have it written down. I'm going to write yes. And, with no more explanation than that.

"MRS. HESS: We object, Judge, without looking at the record."

Trooper Hemel's actual testimony was: "The vehicle had also drifted toward the fog line when it was coming at me." On cross-examination, he testified that when he first encountered Stieben he did not see any traffic violations and saw no conduct that would have led him to stop her.

The response by the trial court constituted error in at least two ways. First, the court violated the express provisions of K.S.A. 22-3420(3). Second, the court intruded on the province of the jury to act as the factfinder, interfering with Stieben's constitutional right to a trial by jury by not only answering the question, but by answering it incorrectly, possibly prejudicing Stieben's defense.

The first point of error relates to the application of the statutes governing jury questions. K.S.A. 60-248(e) allows the court to respond to a jury request for further information relating to any part of the evidence as the court finds to be required under the circumstances. Although the court apparently found its own notes and the memory of the prosecution to suffice, there was disagreement between counsel as to what the testimony had actually been. The jury did not specifically ask that it return to the court for a reading of the testimony, as K.S.A. 22-3420(3) allows. But K.S.A. 22-3420(3) explicitly allows the court to have the testimony read or exhibited to the jury, and where the parties were in disagreement about the testimony, such a direct showing to the jury would have excused the court from relying on its notes and memory.

Where the jury is "obviously confused" on a point of *law*, the court has an obligation to provide further instruction, even if the original jury instruction would normally have been sufficient. The failure of the trial court to give the jury additional information was clearly prejudicial and denied the defendant a fair trial. See *State v. Bandt*, 219 Kan. 816, 823, 549 P.2d 936 (1976); see also *State v. Dunnan*, 223 Kan. 428, 433, 573 P.2d 1068 (1978) (trial court has duty to give jury guidance by answering questions "accurately"). We find that the statutory scheme similarly contemplates a clarifying answer when the jury is obviously confused on a point of fact, and K.S.A. 22-3420(3) provides a direct and uncomplicated mechanism for resolving a jury's confusion.

In this case, the jury confusion related to a point of evidence, and the confusion extended to the trial court. The court therefore had a duty to clarify the confusion by reviewing the transcript.

The second point of error relates to the respective functions of the trial court and the jury. The jury asked the trial court to resolve a question of fact, and the court complied with the jury's request. The court could have directed the jury instead to rely on its collective memory, or the court could have read the testimony back to the jury. The court elected, however, to inform the jury that Stieben crossed the fog line as the trooper approached her.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." This right to a jury trial includes allowing the jury to decide the materiality of evidence supporting an element of the crime charged. *State v. Brice*, 276 Kan. 758, 767, 80 P.3d 1113 (2003) (quoting *United States v. Gaudin*, 515 U.S. 506, 522-23, 115 S. Ct. 2310, 132 L. Ed. 2d 444 [1995]). The prosecution not only bears the burden of proving all the elements of the offense charged, it must also persuade the jury beyond a reasonable doubt of the facts necessary to establish each of those elements. *Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).

An instruction that includes a factual determination made by the trial court "invades the province of the jury as the factfinder" and violates the defendant's rights to have the jury determine his or her guilt or innocence. *Brice*, 276 Kan. at 772.

It is the role of the jury to determine the facts independent of the trial court and to apply the law to those facts in reaching its decision. A plea of not guilty places all issues in dispute, including even things most patently true. " ' "Whatever probative force the government's proof possessed, the jury had the power to accept or reject itor to find it insufficiently persuasive. The defendant had a correlative right to free and unhampered exercise by the jury of all its powers." [Citation omitted.]' " *Brice*, 276 Kan. at 770-71 (quoting *United States v. Mentz*, 840 F.2d 315, 320 [6th Cir. 1988]).

It is for the jury alone to determine the credibility of eyewitnesses. *State v. Carter*, 284 Kan. 312, 328, 160 P.3d 457 (2007).

An expert witness may not testify about the weight or credibility of evidence because those matters belong strictly to the province of the jury. *State v. Graham*, 246 Kan. 78, 81, 785 P.2d 983 (1990). In the present case, the court itself went where an expert witness may not go: it did not just "testify" about the credibility of certain evidence, it used its judicial authority to make the finding of fact for the jury.

This usurpation of the jury's role was especially egregious because the court provided the jury with an answer contrary to the only evidence presented. The *Brice* court stated that a jury might elect to find a fact contrary to what is "patently true." *Brice*, 276 Kan at 770. It did not provide the trial court with the same prerogative.

The Court of Appeals restricted its analysis to whether the court's answer was harmless error:

"We cannot imagine that minor misinformation about the event that initially provoked the arresting officer's attention had any impact on the jury's finding of guilt, especially where there were numerous instances of 'crossing' the fog line thereafter.

"Despite the district court's erroneous answer, we are willing to declare beyond a reasonable doubt that the error had little if any likelihood of changing the result of Stieben's trial. [Citation omitted.] Notwithstanding the departure from the better practice here, the trial court's answer to the jury inquiry was harmless." *Stieben*, slip op. at 10-11.

Harmless error analysis is inappropriate in the present case. Although it would require speculation to find reasons why the jury considered the early driving infraction important in its deliberation, the jury obviously considered it important enough to pose the question to the court. The evidence against Stieben was strong but not overwhelming. It consisted of a series of factors, any one of which standing alone might not have sufficed for conviction. She drifted toward the fog line once and crossed it three times, but she was not weaving all over the road. She committed no other traffic violations. She failed portions of the field sobriety tests, but she was not reeling and she was able to comprehend directions.

In *State v. Myers*, 255 Kan. 3, 9, 872 P.2d 236 (1994), this court found that the district court has a statutory duty to read back tes-

timony when a jury requested it and that failure to comply with K.S.A. 22-3420(3) is not susceptible to harmless error analysis because the requested testimony "could have changed the way the jury evaluated the facts." In the present case, the requested testimony similarly could have changed the way the jury evaluated the facts.

In order to preserve a conviction on appeal where a constitutional trial error has been found, it is the State's burden, as the party favored by the error, to prove beyond a reasonable doubt that the error did not affect Stieben's substantial rights, meaning it did not contribute to the verdict obtained. See *State v. Ward*, No. 99,549, this day decided; *Gamache v. California*, ___ U.S. ___, ___, 131 S. Ct. 591, 592, 178 L. Ed. 2d 514 (2010). The trial court's invasion of the jury's province as factfinder effectively denied Stieben her constitutional right to a jury trial. See *Sullivan*, 508 U.S. at 277 (although judge may direct verdict for defendant if evidence is legally insufficient to establish guilt, judge may not direct verdict for State, no matter how overwhelming the evidence). It is unknown why the jury considered the question important enough to submit it to the trial court, and it is unknown how the jury utilized the answer it received from the court. This court therefore cannot conclude that the State has shown beyond a reasonable doubt that the error did not affect Stieben's substantial rights.

For the foregoing reasons, we find that the trial court committed reversible error in the way that it answered the jury's question about whether Stieben crossed the fog line when she first encountered Trooper Hemel.

Stieben raises additional arguments on appeal relating to whether Trooper Hemel had reasonable suspicion to stop her and whether he had probable cause to arrest her for driving under the influence of alcohol. She raised no contemporaneous objection to Trooper Hemel's testimony concerning her driving, but in light of our determination of the issue of the trial court's response to the jury question, we need not address whether these issues were preserved for appeal or whether the trial court properly admitted the testimony. She also brings up issues regarding the prosecutor's characterization of her driving and raises an allegation of bias on

the part of the trial judge. Because we reverse the conviction on the basis of the answer to the jury question, it is unnecessary to address these final arguments.

Judgment of the Court of Appeals is reversed. Judgment of the district court is reversed.

WILLIAM B. ELLIOTT, District Judge, assigned