NOT DESIGNATED FOR PUBLICATION

No. 126,741

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LISA ANN STALTER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed November 8, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., MALONE and SCHROEDER, JJ.

PER CURIAM: Lisa Ann Stalter, after threatening her ex-boyfriend with a butcher knife in the kitchen, was convicted by a jury of aggravated assault with a deadly weapon. Stalter timely appeals her conviction, arguing (1) the State presented insufficient evidence to establish she placed the victim in reasonable apprehension of immediate bodily harm; (2) the prosecutor misstated the law in closing argument; and (3) the district court erred in imposing a registration requirement without making a finding on the record Stalter used a deadly weapon in the commission of the crime. After our thorough review, we find no error and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of December 8, 2022, Leavenworth County Sheriff's Deputy Jacob Honadel was dispatched to Thomas Heintzelman's residence due to a disturbance with his ex-girlfriend, Stalter, who was living with him. The deputy left the residence after Heintzelman and Stalter each agreed to stay in their respective rooms and not escalate the situation. The deputy was dispatched to the residence again in the early morning hours on December 9, 2022. When the deputy arrived the second time, Heintzelman was at the end of the driveway and told the deputy he had taken a video of Stalter threatening him with a knife.

The State charged Stalter with aggravated assault in violation of K.S.A. 2022 Supp. 21-5412(b)(1). A jury found Stalter guilty as charged. The district court sentenced Stalter to 12 months' imprisonment but suspended the sentence and granted 24 months' probation and ordered Stalter to register as a violent offender for 15 years. Additional facts are set forth as necessary.

ANALYSIS

*The Evidence Was Sufficient to Establish Reasonable Apprehension of Immediate Bodily Harm*

Stalter challenges the sufficiency of the evidence supporting her conviction of aggravated assault with a deadly weapon. Stalter asks us to reverse her conviction and sentence and remand with directions to discharge her of further liability.

Our standard of review for a sufficiency challenge in a criminal case requires us to review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. "There

2

must be evidence supporting each element of a crime to meet the sufficiency of the evidence standard." *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022). We will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. 316 Kan. at 331. It is only in rare cases in which the "evidence [is] so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). This is not one of those cases. To the extent we must interpret K.S.A. 2022 Supp. 21-5412(b)(1), our review is unlimited. See *State v. Deck*, 317 Kan. 101, 105, 525 P.3d 329 (2023).

The burden was on the State to establish beyond a reasonable doubt Stalter knowingly placed Heintzelman in reasonable apprehension of immediate bodily harm with a deadly weapon. See K.S.A. 2022 Supp. 21-5412(b)(1); *State v. Stieben*, 292 Kan. 533, 537, 256 P.3d 796 (2011). Stalter specifically challenges whether Heintzelman was in reasonable apprehension of immediate bodily harm.

K.S.A. 2022 Supp. 21-5412(a) defines assault as "knowingly placing another person in reasonable apprehension of immediate bodily harm." Under K.S.A. 2022 Supp. 21-5412(b)(1), the crime of assault becomes aggravated assault if committed "[w]ith a deadly weapon." The elements necessary to establish a crime may be proved by circumstantial evidence. *State v. Pepper*, 317 Kan. 770, 779, 539 P.3d 203 (2023).

Stalter directs us to *State v. Warbritton*, 215 Kan. 534, 537-38, 527 P.2d 1050 (1974), for the proposition that apprehension of bodily harm means the victim must fear for his or her safety. In *Warbritton*, our Supreme Court explained:

> "We might agree that the atmosphere was heavily fraught with danger and was threatening enough to have induced apprehension on the part of Mrs. Bailey for her personal safety. However, Mrs. Bailey consistently denied while she was on the stand

3

that she had any fear for herself; that she thought Mr. Warbritton would not harm her. She testified she was not scared for herself because she knew the way she was holding the baby, that the defendant would hit it instead of herself, if he pulled the trigger. In the face of positive testimony such as this we cannot say, as urged by the district attorney, that the circumstances were such that, as a matter of law, Mrs. Bailey had fear for herself." 215 Kan. at 537-38.

While *Warbritton* does seem to suggest the victim must undergo fear of personal safety to have apprehension of immediate bodily harm, our Supreme Court, as well as other panels of this court, have distinguished *Warbritton* in other aggravated assault cases. See *State v. Brown*, 300 Kan. 565, 584, 331 P.3d 797 (2014) ("Unlike in *Warbritton*, we are not faced with unequivocal testimony that [the victim] was not afraid for herself."); *State v. Lessley*, 271 Kan. 780, 789-90, 26 P.3d 620 (2001) (aggravated assault conviction upheld based on independent evidence of victim's fear despite victim testifying she was not afraid); *State v. Carbaugh*, No. 108,767, 2013 WL 5303553, at *3 (Kan. App. 2013) (unpublished opinion) ("*Warbritton* did not discuss other circumstantial evidence regarding the victim's actions at the time, while in our case, two independent witnesses saw [the victim] react in apparent fear from Carbaugh's actions.").

We acknowledge the jury was presented with somewhat conflicting testimony to decipher. Heintzelman testified Stalter was looking to pick a fight with him, pulled out a butcher knife, and was pointing it at him and threatening to cut his throat. Heintzelman was on the other side of the kitchen counter from Stalter—about 3 feet away, within lunging distance—when she pulled out the knife and pointed it at him. Heintzelman told the jury he felt safe sitting at the kitchen counter, wanted to avoid making the situation worse, and did not want to put his back to Stalter. Heintzelman explained he "was kind of concerned 'cause [he had] never seen [Stalter] act that way before." Once Stalter threw the knife in the sink, Heintzelman felt the threat was not as severe and quickly left. Heintzelman testified:

4

"I didn't want to get up and make a—make a run for it, whatever, so I—afraid she might, you know, follow behind me with—with the knife, you know. I mean, I don't—I don't know. I didn't know what she was gonna do, so I just waited."

As soon as Heintzelman left, he called the police and waited in the cold in his truck at the end of the driveway for them arrive. Heintzelman recorded a portion of the fight on his cell phone "[t]o have evidence . . . in case something bad would have happened to [him]." It was not normal for Heintzelman to call the police or record arguments with Stalter. The cell phone recording was admitted into evidence for the jury to hear. In the recording, Stalter can be heard saying:

- "I will take this knife out of here and I'll slit your throat, and I won't think twice about it;"
- "You fucked with the wrong woman this time. The wrong crazy fucking woman;" and
- "I'll fucking slice your throat and won't think twice about it."

Heintzelman repeatedly testified he was not scared but explained he was "concerned [he] might get stuck with the knife." On cross-examination, Heintzelman admitted he had once stated under oath he had no reasonable apprehension of immediate bodily harm by any of the conduct alleged against Stalter. On redirect examination, Heintzelman again stated he was concerned he could get cut or stabbed but was not necessarily in fear. Heintzelman explained what he meant by being concerned was that he was worried about going to sleep in his own house that night and did not want to take his eyes off Stalter because she had never acted that way before. Heintzelman felt the possibility for danger existed and was "leery" about the situation.

Honadel testified as to what happened in the early morning. Honadel responded to the incident and explained Heintzelman was waiting at the end of the driveway for law

enforcement to arrive. Once law enforcement arrived, Heintzelman showed Honadel the cellphone recording of the incident. Honadel asked Heintzelman how Stalter's threats made him feel, and Heintzelman said, "'It made the hair on my neck stand up.'" Honadel testified Heintzelman also said he was scared to turn his back on Stalter, he had to leave the house and go to his car to feel safe, and he was afraid to go to sleep that night in fear of what could happen.

Honadel testified, based on his training and experience, it is common for victims who are in apprehension not to be forthwith about how they are feeling. Though Heintzelman did not explicitly say he was scared, Honadel explained there were enough indicators suggesting as much based on Heintzelman's statements and actions.

While the jury heard conflicting testimony, there was sufficient circumstantial evidence to establish Heintzelman was in reasonable apprehension of immediate bodily harm despite testifying he was not scared. Heintzelman physically left the house once Stalter threw the knife in the sink and waited in his truck at the end of the driveway for law enforcement to arrive. Heintzelman specifically waited until Stalter put the knife down before turning his back to her to leave the house. According to Honadel, Heintzelman said the incident made the hairs on the back of his neck stand up, he was hesitant to go back in the house and go to sleep while Stalter was there as he did not know what could happen, and Stalter had never exhibited this type of behavior before.

Reviewing the evidence in the light most favorable to the State, a rational fact-finder could have found Stalter guilty beyond a reasonable doubt of aggravated assault with a deadly weapon—a butcher knife from the kitchen.

6

*The Prosecutor Did Not Misstate the Law Involving Heintzelman's Fear of Stalter*

Stalter argues the prosecutor misstated the law in closing argument by telling the jury the State did not have to prove the victim was fearful.

A prosecutor's comments made during voir dire, opening statement, or closing argument are reviewed by appellate courts even if the defendant failed to contemporaneously object. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017). Appellate courts use a two-step process—looking at error and prejudice—to evaluate claims of prosecutorial error:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

A prosecutor cannot misstate the law in furtherance of the prosecution or argue factual inferences without evidentiary foundation. *State v. Patterson*, 311 Kan. 59, 70, 455 P.3d 792 (2020).

During closing argument, the prosecutor stated: "Now, fearful's not the standard. Lots of talk about fear. That's not the [standard]. We talked about all of the different ways that he [was] apprehensive, and you don't have to be scared."

As with the sufficiency of the evidence, Stalter continues to rely on *Warbritton* for the proposition that apprehension of bodily harm means the victim must fear for his or her safety. The State points out *Warbritton* does not discuss the nuances between the terms apprehension and fear. The State admits proving that a victim was afraid or scared

would inherently prove apprehension of bodily harm, though fear is not the standard and not necessarily synonymous with apprehension. Apprehension is defined in Black's Law Dictionary as "[f]ear and anxiety about the future, esp. about dealing with an unpleasant person or a difficult situation." Black's Law Dictionary 126 (11th ed. 2019). The term is also defined as "an anxious feeling of foreboding; dread." Webster's New World College Dictionary 70 (5th ed. 2018). Black's Law Dictionary defines fear as "[t]he strong, negative feeling that a person experiences when anticipating danger or harm." Black's Law Dictionary 752. The definitions seem to largely overlap.

That said, the Legislature could have used the word fear if it intended to. Rather, the Legislature explicitly used the term "apprehension" instead of fear in defining the crime of aggravated assault. See K.S.A. 21-5412(a)-(b). Other criminal statutes—such as K.S.A. 21-5415(a)(1) (criminal threat), K.S.A. 21-5427(a)(1)-(4) (stalking), K.S.A. 21-5503(a)(1)(A) (rape), K.S.A. 21-5504(b)(3)(A) (aggravated criminal sodomy), and K.S.A. 21-5505(b)(1) (aggravated sexual battery)—explicitly use the word fear. The Legislature could have used the word fear in the aggravated assault statute as it has done in other criminal statutes and chose not to. Thus, there is a distinction between the terms apprehension and fear.

We find the prosecutor did not misstate the law as to whether Heintzelman had to experience fear for Stalter to be convicted of aggravated assault.

*Stalter Must Register as a Violent Offender Based on Her Use of a Deadly Weapon While Committing Her Crime*

Stalter contends the district court made no factual finding she used a deadly weapon in the commission of a person felony, so her sentence is illegal as the district court lacked statutory authority to order her to register as a violent offender. In the alternative, Stalter claims we can reach this issue for the first time on appeal as it is a

question of law arising on proved or admitted facts and is finally determinative of the case. See *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020). Stalter asks us to vacate her registration requirement. The State responds Stalter is incorrect in asserting she can raise this issue through a motion to correct illegal sentence but concedes the issue can be heard for the first time on appeal. See *State v. Carter*, 311 Kan. 206, 209, 459 P.3d 186 (2020).

The legality of a sentence is a question of law subject to de novo review. Statutory interpretation is also a question of law subject to unlimited review. *State v. Johnson*, 317 Kan. 458, 461, 531 P.3d 1208 (2023).

Stalter's argument her sentence is illegal because the district court lacked statutory authority to order her to register as a violent offender fails. "KORA [Kansas Offender Registration Act] is a 'nonpunitive civil regulatory scheme' that does not inflict additional punishment on registrants." *Carter*, 311 Kan. at 213. The obligation to register under KORA is not part of the sentence. *State v. Rocheleau*, 307 Kan. 761, 765, 415 P.3d 422 (2018). Thus, the district court could not have imposed an illegal sentence on Stalter by ordering her to register as a violent offender because offender registration is not part of the sentence.

K.S.A. 22-4902(e)(2) defines a violent offender as a person who "on or after July 1, 2006, is convicted of any person felony and the court makes a finding on the record that a deadly weapon was used in the commission of such person felony." Our Supreme Court has made it clear a district judge must make a finding on the record before a KORA obligation to register as a violent offender arises. See *Carter*, 311 Kan. at 209; *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018); *State v. Thomas*, 307 Kan. 733, 749, 415 P.3d 430 (2018).

At sentencing, the district court stated:

"This case also is one that requires offender registration, so the Court is gonna order that the defendant register for a period of 15 years with the sheriff's office. The defendant has already executed a notice of duty to register and that has been filed with the clerk of the court."

Stalter relies on *Thomas*, in which the district court told Thomas she had to register under KORA but failed to make a specific finding on the record that a deadly weapon was used in the commission of the crime. On appeal, another panel of this court vacated Thomas' registration requirement and remanded to the district court to make a deadly weapon finding. On petition for review, our Supreme Court stated it would not review the panel's decision that without a court-made deadly weapon finding on the record the registration requirement was not triggered because the State did not file a cross-petition. 307 Kan. at 734. Rather, our Supreme Court focused on the procedural posture of the claim and found the panel improperly remanded to the district court for resentencing. 307 Kan. at 747. Our Supreme Court explained: "A remand in these circumstances amounts to giving the State a judicially created second bite at the registration apple—something that is wholly inconsistent with the springing character of the registration requirement at issue in this case." 307 Kan. at 749. Further, the *Thomas* court noted the journal entry of judgment made no mention of Thomas' duty to register. 307 Kan. at 746.

*Carter* and *Marinelli* provide better guidance. In *Marinelli*, the district judge and counsel completed the journal entry of judgment, which contained the requisite finding by checking the box labeled "Yes," indicating the offender committed the current crime with a deadly weapon. 307 Kan. at 772. The journal entry of judgment also reflected the district court informed the defendant of his duty to register under KORA, and the supplement attached to the journal entry showed the offender was required to register as a

10

violent offender for a person felony conviction committed with a deadly weapon. 307 Kan. at 789. The record supported these findings. 307 Kan. at 798.

Similarly, in *Carter*, the district judge made an oral finding on the record there was a dangerous weapon—rather than a deadly weapon—involved in Carter's crime. The journal entry of judgment included a checked box indicating Carter used a deadly weapon in the commission of her crime. Carter failed to acknowledge the journal entry findings on appeal. Our Supreme Court held: "[T]he journal entry included in the record of this case shows the district judge made the necessary finding under K.S.A. 2019 Supp. 22-4902(e)(2). Thus, Carter's challenge to her registration requirement fails." 311 Kan. at 211.

Here, the district court noted on the record this was an offender registration case and ordered Stalter to register for 15 years. Like *Carter* and *Marinelli*, the journal entry of judgment checked the box confirming Stalter committed the crime with a deadly weapon. The journal entry also names the primary offense of conviction as "Aggravated Assault; use of a deadly weapon; butcher knife." The offender registration was attached to the journal entry and showed Stalter committed a "person felony with Court finding on the record that such felony was committed with a DEADLY WEAPON." Stalter's challenge to her registration requirement fails.

Affirmed.